# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2013AP1724 |
| COMPLETE TITLE: | State of Wisconsin ex rel. Aman Singh, Petitioner-Appellant-Petitioner, v. Paul Kemper, Warden, Racine Correctional Institution, Respondent-Respondent-Cross Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 353 Wis. 2d 520, 846 N.W.2d 820)
(Ct. App. 2014 – Published)
PDC No: 2014 WI App 43

| | |
|---|---|
| OPINION FILED: | July 13, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 14, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Racine |
| JUDGE: | Gerald P. Ptacek |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | PROSSER, J. concurs (Opinion filed). |
| CONCURRED/DISSENTED: | ZIEGLER, J. and GABLEMAN, J. concur and dissent (Opinion filed). |
| DISSENTED: | ROGGENSACK, C. J. dissents (Opinion filed). BRADLEY, R. G., J. and ROGGENSACK, C. J.(joining part C.) dissent (Opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the petitioner-appellant-petitioner, there were briefs by *Thomas L. Shriner, Jr.*, *Brett H. Ludwig*, *Philip C. Babler*, and *Foley & Lardner LLP*, Milwaukee and oral argument by *Philip C. Babler*.

For the respondent-respondent-cross-petitioner, the cause was argued by *Sara Lynn Shaeffer*, assistant district attorney with whom on the briefs was *Brad D. Schimel*, attorney general.

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2013AP1724
(L.C. No. 2013CV1540)

STATE OF WISCONSIN : IN SUPREME COURT

**State of Wisconsin ex rel. Aman Singh,**

    **Petitioner-Appellant-Petitioner,**

  v.

**Paul Kemper, Warden, Racine Correctional Institution,**

    **Respondent-Respondent-Cross Petitioner.**

**FILED**

**JUL 13, 2016**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed in part, reversed in part.*

¶1 ANN WALSH BRADLEY, J. We are presented with both a petition and a cross-petition for review involving the constitutionality of legislation that repealed and modified a law, 2009 Wis. Act 28, that allowed inmates the opportunity to

earn "positive adjustment time," by which inmates could obtain early release from prison.[1]

¶2  The constitutionality of two provisions of 2011 Wis. Act 38 relating to 2009 Wis. Act 28, which adopted positive adjustment time, are at issue in this case:  (1) the retroactive

---

[1] The mandate is to affirm in part and reverse in part the opinion of the court of appeals.  Five justices are in accord with this mandate (Abrahamson, J., Ann Walsh Bradley, J., Prosser, J., Ziegler, J., and Gableman, J.).  Accord on the individual issues, however, is mixed.

A majority of the court concludes that Wis. Stat. § 973.198 violates the constitutional prohibition against ex post facto laws because it makes the punishment for an offense more burdensome after it was committed.  Five justices reverse the court of appeals determination on this issue (Abrahamson, J., Ann Walsh Bradley, J., Prosser, J., Ziegler, J., and Gableman, J.).

Likewise a majority of the court concludes that the retroactive repeal of positive adjustment time violates the ex post facto clause vis-à-vis the July 2011 offense.  Five justices would affirm the court of appeals determination of that issue (Abrahamson, J., Ann Walsh Bradley, J., Prosser, J., Ziegler, J., and Gableman, J.).

However, no majority has been garnered as to whether the retroactive repeal violates the ex post facto clause vis-à-vis the 2008 offense.  Three justices conclude that it does (Abrahamson, J., Ann Walsh Bradley, J., and Prosser, J.); two justices conclude that it does not (Roggensack, C.J. and Rebecca G. Bradley, J.); and two justices do not address the issue (Ziegler, J., and Gableman, J.).

Finally, there are two justices who would vote to remand this case to the circuit court for a determination of whether Singh is entitled to relief (Abrahamson, J., Ann Walsh Bradley, J.).  However, a majority of the court would not remand (Roggensack, C.J., Prosser, J., Ziegler, J., Gableman, J. and Rebecca G. Bradley, J.).

2

repeal of positive adjustment time, and (2) the preservation of positive adjustment time earned while 2009 Wis. Act 28 was in effect and alterations to the process for obtaining early release based on positive adjustment time, which we refer to as Wis. Stat. § 973.198.

¶3 The petitioner, Aman Singh, seeks review of a published court of appeals decision that reversed in part and affirmed in part the circuit court's order dismissing his petition for writ of habeas corpus.[2] Singh contends that Wis. Stat. § 973.198 delays inmates' release from prison by up to 90 days, thereby violating the ex post facto clauses of the Wisconsin and United States Constitutions.[3]

¶4 He argues that under Wis. Stat. § 973.198, inmates who are eligible for positive adjustment time are released up to 90 days later than under 2009 Wis. Act 28. Asserting that this change results in a longer period of incarceration, Singh claims

---

[2] State ex rel. Singh v. Kemper, 2014 WI App 43, 353 Wis. 2d 520, 846 N.W.2d 820 (affirming in part and reversing in part an order quashing writ of habeas corpus and dismissing petition entered by the circuit court for Racine County, Gerald P. Ptacek, J., presiding).

[3] The prohibition on ex post facto laws in the Wisconsin Constitution is found in Article 1, Section 12, which provides: "No . . . ex post facto law . . . shall ever be passed . . . ."

The prohibition on ex post facto laws in the United States Constitution is found in Article I, Sections 9 and 10. Section 9 provides: "No bill of Attainder or ex post facto Law shall be passed." Section 10 provides: "No state shall . . . pass any . . . ex post facto Law. . . . "

that § 973.198 violates the ex post facto clauses. We agree with Singh that Wis. Stat. § 973.198 violates the constitutional prohibition against ex post facto laws because it results in a longer period of incarceration, thus making the punishment for an offense more burdensome after it was committed.[4]

¶5 Cross-petitioner, Paul Kemper, in his capacity as warden of the Racine Correctional Institute, seeks review of that part of the court of appeals' decision that reversed the circuit court's order dismissing Singh's petition for writ of habeas corpus. He asserts that because Singh committed one of his crimes before the enactment of positive adjustment time in 2009 Wis. Act 28, the court of appeals erroneously concluded that the retroactive application of 2011 Wis. Act 38, which eliminated the opportunity for inmates to continue earning positive adjustment time, was an ex post facto violation of the Wisconsin and United States Constitutions.

¶6 This case presents the unusual circumstance of a defendant who was convicted and sentenced under 2009 Wis. Act 28, which made positive adjustment time available when it was not originally available at the time of the offense. Kemper argues that the court of appeals erred because it focused on changes in the law when the defendant was convicted and sentenced, rather than changes in the law at the time the defendant committed the offenses.

---

[4] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

4

¶7     We disagree with Kemper because in this case, due to the retroactive application of positive adjustment time, Singh was convicted and sentenced while 2009 Wis. Act 28 was in effect.    Both Wisconsin and United States Supreme Court precedent supports assessing the ex post facto effect of a law in reference to the time the defendant committed the offense, was convicted, or was sentenced.

¶8     Like the court of appeals, we conclude that because the early release provisions of 2009 Wis. Act 28 were retroactively in effect when Singh was convicted and sentenced for the first offense, as well as at the time he committed the second offense, that the retroactive repeal of positive adjustment time in 2011 Wis. Act 38 violates the ex post facto clauses of the Wisconsin and United States Constitutions. However, unlike the court of appeals, we conclude that Wis. Stat. § 973.198 also violates the constitutional prohibition against ex post facto laws because it makes the punishment for an offense more burdensome after it was committed.

¶9     Accordingly, we affirm the court of appeals' determination that the retroactive repeal of positive adjustment time is an ex post facto violation, but reverse its determination that Wis. Stat. § 973.198 does not violate the constitutional prohibition against ex post facto laws. Additionally, I would remand the cause to the circuit court for a determination of whether under the current circumstances it is now appropriate to grant the writ and what additional relief, if any, is warranted.

5

I

¶10 The relevant facts of this case as presented by the parties are not in dispute. They involve two legislative changes made by 2011 Wis. Act 38. One retroactively repealed positive adjustment time. The other created Wis. Stat. § 973.198, a new statute that preserved the opportunity of early release for certain individuals and altered the procedure obtaining early release based on positive adjustment time.

¶11 During the time period when Singh was first charged in 2008 until he began serving his prison sentence in early 2012, the Legislature enacted and then repealed 2009 Wis. Act 28, which provided inmates with the opportunity to earn early release from prison.

¶12 Enacted in 2009, Wis. Stat. § 302.113(2)(b) (2009-10), provided inmates convicted of Class F to I felonies the opportunity to earn one day of positive adjustment time for every two days of confinement.[5] Positive adjustment time was

---

[5] Some inmates not eligible for positive adjustment time under Wis. Stat. § 302.113(2)(b) (2009-10) were instead eligible pursuant to Wis. Stat. § 304.06(1)(bg)1. (2009-10). Under the latter statute, inmates earned one day of positive adjustment time for every three days served. Wisconsin Stat. § 304.06(1)(bg)1. (2009-10) provided:

A person sentenced under s. 973.01 for a Class F to Class I felony or a misdemeanor that is not a violent offense, as defined in s. 301.048(2)(bm)1., and who is ineligible for positive adjustment time under s. 302.113(2)(b) pursuant to s. 973.01(3d)(b) or for a Class F to Class I felony that is a violent offense, as defined in s. 301.048(2)(bm)1., may earn one day of positive adjustment time for every 3 days served that

(continued)

earned for every two days that the inmate did not violate any regulation of the prison or refuse or neglect to perform required or assigned duties.

¶13 Wisconsin Stat. § 302.113(2)(b) (2009-10) provided in relevant part:

An inmate sentenced under s. 973.01 for a misdemeanor or for a Class F to Class I felony that is not a violent offense, as defined in s. 301.048(2)(bm)1., may earn one day of positive adjustment time for every 2 days served that he or she does not violate any regulation of the prison or does not refuse or neglect to perform required or assigned duties.

¶14 In 2011 the Legislature passed 2011 Wis. Act 38 as part of a budget bill, which repealed the early release provisions in 2009 Wis. Act 28. Consequently, after August 3, 2011, prisoners were generally precluded from earning positive adjustment time.

¶15 The 2011 Act also created Wis. Stat. § 973.198, which preserved the opportunity for certain individuals to earn early release based on positive adjustment time earned between October 1, 2009 and August 3, 2011, but altered the procedures

---

he or she does not violate any regulation of the prison or does not refuse or neglect to perform required or assigned duties. The person may petition the earned release review commission for release to extended supervision when he or she has served the term of confinement in prison portion of his or her bifurcated sentence, as modified by the sentencing court under s. 302.045(3m)(b)1. or 302.05(3)(c)2.a., less positive adjustment time he or she has earned.

7

for procuring early release. Section 973.198 provides in relevant part:

> (1) When an inmate who is serving a sentence imposed under s. 973.01 and who has earned positive adjustment time under s. 302.113, 2009 stats., or under s. 304.06, 2009 stats., has served the confinement portion of his or her sentence less positive adjustment time earned between October 1, 2009, and August 3, 2011, he or she may petition the sentencing court to adjust the sentence under this section, based on the number of days of positive adjustment time the inmate claims that he or she has earned.
>
> (3) Within 60 days of receipt of a petition filed under sub. (1), the sentencing court shall either deny the petition or hold a hearing and issue an order relating to the inmate's sentence adjustment and release to extended supervision.
>
> (5) If the court determines that the inmate has earned positive adjustment time, the court may reduce the term of confinement in prison by the amount of time remaining in the term of confinement in prison portion of the sentence, less up to 30 days, and shall lengthen the term of extended supervision so that the total length of the bifurcated sentence originally imposed does not change.

¶16 Under the Wis. Stat. § 973.198, inmates are not permitted to file a petition requesting early release until the day that they are actually eligible for release. Filing a petition under § 973.198 starts a process for early release that can take up to 90 days, even though the inmate is eligible for release on the day he files the petition.

¶17 In contrast, under the repealed 2009 Act, 90 days before an inmate was eligible for release the DOC was required to notify the sentencing court that it intended to modify the

8

inmate's sentence and release the inmate to extended supervision. Wisconsin Stat. § 302.113(2)(c)1. (2009-10) provided:

> When an inmate is within 90 days of release to extended supervision under par. (b), the department shall notify the sentencing court that it intends to modify the inmate's sentence and release the inmate to extended supervision under par. (b), and the court may hold a review hearing. If the court does not schedule a review hearing within 30 days after notification under this subsection, the department may proceed under par. (b).

¶18 Under the 2009 Wis. Act 28, the sentencing court had the discretion to hold a hearing within 30 days after it received notice from the DOC. Wis. Stat. § 302.113(2)(c)1. If the sentencing court opted to conduct a review, it was required to hold the hearing and issue an order relating to the inmate's early release within 60 days of receiving the DOC's notice. Section 302.113(c)2.a. In contrast to the current law, an inmate could then be released on the first day he was eligible.

¶19 Singh's case arose in the midst of rapid legislative changes to the laws governing inmates' ability to earn early release from prison based on positive adjustment time. In 2008, Singh was charged with obtaining a controlled substance by fraud in violation of Wis. Stat. § 961.43(1)(a).[6] He was convicted and

---

[6] Wisconsin Stat. § 961.43(1)(a) provides: "It is unlawful for any person: To acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge." Any person who violates this section is guilty of a class H felony. Wis. Stat. § 961.43(2).

9

sentenced in 2010 to three years of probation, with a three-year bifurcated sentence imposed and stayed. Singh's sentence included six months of jail time as a condition of probation.[7]

¶20 In July of 2011, Singh committed another violation of Wis. Stat. § 961.43(1)(a). After the second offense, Singh's probation for his first offense was revoked. He received a five-year bifurcated sentence for the second offence, to be served consecutively to his first sentence.

¶21 In 2012, Singh filed a petition for positive adjustment time pursuant to Wis. Stat. § 973.198. The Department of Corrections (DOC) denied Singh's request for early release because he did not serve any time in prison between October 1, 2009 and August 3, 2011.

¶22 After the DOC denied Singh's petition for positive adjustment time, he filed a petition for writ of habeas corpus with the circuit court. The circuit court entered an order

---

[7] At oral argument this court was advised that on July 14, 2015, Singh's judgment of conviction for the 2008 Waukesha County offense was amended from prison time to one year served in the county jail. Such an amendment may give rise to an issue of whether Singh would be entitled to positive adjustment time for time served in the county jail. It also raises the question of whether Singh's claim is moot if he was eligible for positive adjustment time only for the time served in prison, rather than the county jail. See ¶24 n.8, infra. Because we first learned of this at oral argument and those issues were neither briefed nor argued before this court, I do not now address them. I would remand to the circuit court for a determination of this issue.

quashing the writ and dismissing Singh's petition with prejudice.

¶23 On appeal, Singh argued that the retroactive repeal of positive adjustment time and the enactment of Wis. Stat. § 973.198 were ex post facto laws. The court of appeals concluded that the retroactive repeal of positive adjustment time was unconstitutional, but that § 973.198 was not an ex post facto law.

¶24 Singh filed a petition for review on the issue of whether Wis. Stat. § 973.198 was an ex post facto law.[8] Kemper

---

[8] Singh also petitioned for review on an issue that we did not accept involving the open records law.

After this court accepted the petition and cross-petition for review, Singh informed the court that he had been released to extended supervision and was no longer incarcerated. This court ordered the parties to file briefs on the issue of mootness due to Singh's release from custody.

Singh argues that the issue of whether Wis. Stat. § 973.198 is an ex post facto law is not moot because he remains on extended supervision and subject to incarceration until 2018. He further asserts that even if his case is moot, this court should address this issue.

The State argues that both the issue Singh raises in his petition and the issue the State raises in its cross-petition are moot. Nevertheless, the State argues that this court should consider the issue raised in its cross-petition because other inmates who were eligible for positive adjustment time are likely to raise the issue of whether the retroactive repeal of early release is an ex post facto violation.

(continued)

11

cross-petitioned on the issue of whether 2011 Wis. Act 38's retroactive repeal of 2009 Wis. Act. 28's positive adjustment time was an ex post facto law.

II

¶25 A circuit court's order denying a petition for writ of habeas corpus presents a mixed question of fact and law. State v. Pozo, 2002 WI App 279, ¶6, 258 Wis. 2d 796, 654 N.W.2d 12. We will not reverse the circuit court's findings of fact unless they are clearly erroneous. Id. Whether a writ of habeas corpus is available to the party seeking relief is a question of law that we review independently of the determinations rendered by the circuit court and the court of appeals. Id.

¶26 Similarly, whether a statute violates the ex post facto clauses of the Wisconsin and United States Constitutions is a question of law that this Court reviews independently of the determinations of the circuit court and the court of appeals. State v. Elward, 2015 WI App 51, ¶5, 363 Wis. 2d 628, 866 N.W.2d 756. There is a strong presumption that legislative enactments are constitutional. Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶76, 350 Wis. 2d 554, 835 N.W.2d 160. Singh has the burden of establishing beyond a

---

Even if they are moot, we address both the issue raised in Singh's petition and the issue raised in the State's cross-petition. Both issues are of public importance, are likely to affect other inmates, and involve the constitutionality of a statute. State ex rel. La Crosse Tribune v. Cir. Ct. for La Crosse Cty., 115 Wis. 2d 220, 229, 340 N.W.2d 460 (1983).

reasonable doubt that the challenged legislation is unconstitutional. Chappy v. LIRC, 136 Wis. 2d 172, 184-85, 401 N.W.2d 568 (1987).

III

¶27 We address first the issue raised by Kemper's cross-petition because it is foundational to our discussion of the issue Singh raised in his petition for review. Before we can decide Singh's claim that Wis. Stat. § 973.198 delays early release by up to 90 days, we must first decide whether he was eligible for early release under 2009 Wis. Act. 28.

¶28 In Collins v. Youngblood, 497 U.S. 37, 42 (1990), the United State Supreme Court explained that any statute that makes the punishment for a crime more burdensome after it is committed is prohibited as an ex post facto law. This court explicitly adopted the standard set forth in Collins, concluding that:

> [A]n ex post facto law, prohibited by the Wisconsin Constitution, is any law: 'which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time the act was committed . . . .'

State v. Thiel, 188 Wis. 2d 695, 703, 524 N.W.2d 641 (1994) (quoting Collins, 497 U.S. at 42).

¶29 Kemper asserts that the court of appeals erred when it determined that a law violates the ex post facto clauses if it imposes a greater punishment than the law in effect at the time an inmate was convicted and sentenced for an offense. See State ex rel. Singh v. Kemper, 2014 WI App 43, ¶10, 353 Wis. 2d 520,

13

846 N.W.2d 820. He argues that the repeal of 2009 Wis. Act 28 cannot be an ex post facto violation as applied to Singh's 2008 offense because it did not increase the punishment beyond what it was at the time of the 2008 offense.

¶30 Relying on State v. Kurzawa, 180 Wis. 2d 502, 511, 509 N.W.2d 712 (1994), Kemper advances that one of the fundamental aspects of ex post facto analysis is its focus on changes in the law relative to the time of the defendant's allegedly illegal behavior. He concludes that Singh was not eligible for early release because Singh committed the 2008 offense prior to the enactment of 2009 Wis. Act. 28.

¶31 We are not persuaded by Kemper's argument that the court of appeals erred in determining that an ex post facto law increases the punishment imposed at the time of conviction and sentencing, as well as at the time it was committed. Rather, we agree with the court of appeals that an ex post facto law increased the punishment imposed after an offense has been committed. In determining whether such a change in punishment occurred here, we must examine how the progression of Singh's criminal cases fit within the timeline of rapid changes in the law governing early release from prison.

¶32 Although 2009 Wis. Act 28 was not in effect when Singh committed his first offense in 2008, it was enacted to apply retroactively. 2009 Wis. Act 28, §§ 2722, 9311. Pursuant to 2009 Wis. Act 28, inmates sentenced on or after December 31, 1999 could begin earning positive adjustment time staring on October 1, 2009. At the time Singh was sentenced in 2010 for

14

the offense he committed in 2008, 2009 Wis. Act. 28 was in effect.

¶33 Subsequently, the Legislature passed 2011 Wis. Act 38, which repealed and modified the early release provisions in 2009 Wis. Act 28. Under 2011 Wis. Act 38, prisoners were precluded from earning positive adjustment time after August 3, 2011. When Singh committed his second offense on July 25, 2011, 2009 Wis. Act 28 was still in place. By the time he was convicted and sentenced later that year, as well as when he began to serve his sentence in prison in 2012, the 2009 Act had been repealed.

¶34 Singh's case is complicated by the fact that he did not serve time in prison prior to the 2011 repeal of 2009 Wis. Act. 28. After his first offense in 2008, Singh was convicted and sentenced to three years of probation, with six months of jail time as a condition of probation. It was not until Singh's second offense in 2011 that his probation for the first offence was revoked. Later, he received a five-year bifurcated sentence for the second offense to be served consecutively with his first sentence. Singh's first day in prison was January 4, 2012.

¶35 The court of appeals determined that "[w]hen Singh committed or was convicted and sentenced on his offenses, the 2009 act and its multiple early release opportunities were the law." Singh, 353 Wis. 2d 520, ¶19 (emphasis added). It concluded that eliminating Singh's eligibility for early release ensured that he would serve his full sentence in prison, resulting in a significant risk that he would serve more

15

confinement time than under 2009 Wis. Act 28. Id. "The ex post facto clauses prohibit this." Id.

¶36 We recognize that ordinarily an inmate will be convicted and sentenced under the law that was in effect at the time the offense was committed. In this case, however, Kemper's focus on the timeframe for when an ex post facto violation may occur is too narrow because 2009 Wis. Act 28 applied retroactively to inmates sentenced on or after December 31, 1999. At the time Singh committed the 2008 offense the sentencing structure for a Class H felony did not offer the opportunity to earn positive adjustment time. However, the retroactive application of positive adjustment time means that 2009 Wis. Act 28 applied at the time Singh was convicted and sentenced.

¶37 Even if for the sake of argument we accept Kemper's focus on changes in the law at the time the defendant committed the offense, he is incorrect that Singh was not eligible for early release. Although Singh committed his first offense in 2008, prior to the enactment of 2009 Wis. Act 28, he committed his second offense on July 25, 2011. At the time that Singh committed his second offense, the early release provisions of 2009 Wis. Act 28 were in place. After his second offense, Singh's probation for his first offense was revoked and he served his sentences for both offenses consecutively. Thus, Singh was entitled to earn positive adjustment time for the time he served in prison as a result of the offense he committed on July 25, 2011.

16

¶38 Kemper does not dispute that the retroactive repeal of early release would violate the ex post facto clauses if Singh had been eligible for positive adjustment time. Instead, he asserts that Singh was never eligible for early release based upon positive adjustment time because Singh committed his crime before the enactment of 2009 Wis. Act 28. However, both Wisconsin and United States Supreme Court precedent prohibiting ex post facto laws support including the time an inmate is convicted and sentenced.

¶39 The animating principle underlying the ex post facto clauses is the concept of fair warning. Kurzawa, 180 Wis. 2d at 513 (quoting Marks v. United States, 430 U.S. 188, 191-92 (1977)). As the United States Supreme Court explained, "[t]hrough [the ex post facto] prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." Weaver v. Graham, 450 U.S. 24, 28-29 (1981).

¶40 Kemper seems to believe that the repeal of a mitigating law that was in place when Singh was sentenced will simply put Singh in the position that he would have been in at the time he committed the crime. However, we cannot ignore the fact that Singh relied on 2009 Wis. Act 28 as the law at the time of his plea and sentencing.

¶41 In Weaver, the United States Supreme Court considered whether the retroactive application of a revised "gain-time" provision was an ex post facto law. 450 U.S. at 31. The Weaver

17

court explained that "a prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." Id. at 32. Accordingly, Weaver concluded that for prisoners who committed crimes before the statute was enacted, it substantially altered the consequences attached to a crime already completed and therefore "change[d] the quantum of punishment." Id. at 33.

¶42 Likewise, in Lynce v. Mathis, 519 U.S. 433, 446-47 (1997), the Supreme Court concluded that it was an ex post facto violation to cancel good-time credits that had been awarded pursuant to statutes enacted after the date the defendant committed his offense. In Lynce, a retroactive statute took away good-time credits that existed at the time of conviction and sentencing, but did not exist at the time the defendant committed the offense. Id. at 447. The Lynce court remanded the case for a determination of the number of good-time credits that the defendant accumulated under the statutes that existed at the time of his conviction and sentencing, concluding that they could not be cancelled by the retroactive law. Id. at 449.

¶43 Lynce acknowledged that "[t]he bulk of our ex post facto jurisprudence" involves claims that a law inflicted a greater punishment than at the time the offense was committed." Id. at 441. However, it explained that an ex post facto law must simply be retrospective in that it "must apply to events occurring before its enactment." Id.

18

¶44 Applying the ex post facto protection to conviction and sentencing is consistent with the principle that "the Constitution places limits on the sovereign's ability to use its lawmaking power to modify bargains it has made with its subjects." Id. at 440. This basic principle protects a "defendant engaged in negotiations that may lead to an acknowledgment of guilt and a suitable punishment." Id.

¶45 Similarly, in State ex rel. Eder v. Matthews, 115 Wis. 2d 129, 340 N.W.2d 66 (Ct. App. 1983), the Wisconsin court of appeals addressed the issue of whether application of a "good time" calculation violated the ex post facto clauses. The Matthews court explained that the application of the "good time" formula would increase the period of the defendant's confinement. Id. at 133. Matthews concluded that "[a] law which increases or alters the punishment of an offender to his detriment, after he has been convicted and sentenced, constitutes an ex post facto law . . . ." Id. (emphasis added).

¶46 If this court adopted the position advanced by Kemper that a law can retroactively increase the length of time an inmate is incarcerated after sentencing, we would have to overrule Matthews. We decline to do so because it is consistent with United States Supreme Court precedent.

¶47 The early release provisions of 2009 Wis. Act 28 were in effect when Singh was convicted and sentenced for the first offence, as well as at the time he committed the second offence. Just as in Weaver and Matthews, the repeal of early release would impermissibly retroactively increase Singh's punishment

19

after he was convicted and sentenced. Under both Wisconsin and Supreme Court precedent, the repeal of early release after the commission of an offense violates the ex post facto clauses.

¶48 Accordingly, we agree with the court of appeals that retroactive repeal of positive adjustment time in 2011 Wis. Act 38 violates the ex post facto clauses of the Wisconsin and United States Constitutions.

IV

¶49 We address next the issue raised in Singh's petition for review. He contends that the newly created Wis. Stat. § 973.198 violates the ex post facto clauses because it extends the amount of time an inmate is incarcerated by up to 90 days after he is eligible for early release.[9]

¶50 Under 2009 Wis. Act 28, the DOC was required to notify the sentencing court 90 days before an inmate was eligible for release that it intended to modify the inmate's sentence and release the inmate to extended supervision. Wis. Stat. § 302.113(2)(c)1. (2009-10). The sentencing court had the discretion to hold a hearing within 30 days after it received notice from the DOC. Id.

---

[9] At the court of appeals, Singh challenged the role of the sentencing court under Wis. Stat. § 973.198. Singh raised this issue in his petition for review. We need not address that issue because we conclude that Wis. Stat. § 973.198 is an ex post facto law due to the fact that it adds up to a 90 day delay in release compared to the prior law.

¶51 If the sentencing court opted to conduct a review hearing, it was required to hold the hearing and issue an order relating to the inmate's early release within 60 days of receiving the DOC's notice. Wis. Stat. § 302.113(c)(2)a. (2009-10). When the court did not schedule a review hearing within 30 days after notification from the DOC, the inmate would be released on the first day he was eligible. § 302.113(2)(b) & (c)1. (2009-10).

¶52 Although 2011 Wis. Act 38 eliminated positive adjustment time after August 3, 2011, by enacting Wis. Stat. § 973.198, it allowed those inmates who earned positive adjustment time while 2009 Wis. Act 28 was in effect to petition for early release. Rather than retain the procedures set forth in Wis. Stat. § 302.113 (2009-10), the Legislature enacted § 973.198, which now governs the process for early release for inmates who earned positive adjustment time under 2009 Wis. Act 28.

¶53 Pursuant to Wis. Stat. § 973.198(1), an inmate who earned positive adjustment time under Wis. Stat. § 302.113 (2009-10) may petition for early release after he has served the confinement portion of his sentence minus any positive adjustment time earned. Within 60 days of receiving the inmate's petition, the sentencing court "shall either deny the petition or hold a hearing and issue an order relating to the inmate's sentence adjustment and release to extended supervision." § 973.198(3). If the court determines that an inmate has earned positive adjustment time, it "may reduce the

21

term of confinement in prison by the amount of time remaining in the term of confinement in prison portion of sentence, less up to 30 days. . . ." § 973.198(1).

¶54 Singh argues that Wis. Stat. § 973.198 violates the ex post facto clauses because it delays the release of inmates who have earned positive adjustment time. Under 2009 Wis. Act 28, the process for obtaining early release began 90 days before inmates were eligible to be released. Then, the procedures for processing an inmate's release were completed within 90 days and the inmate was released on his eligibility date.

¶55 In contrast, under Wis. Stat. § 973.198, an inmate cannot file a petition for early release based on positive adjustment time until the date on which he is first eligible for release. The filing of the petition begins a process for determining eligibility for release that can take up to 90 days. For inmates who have earned positive adjustment time, § 973.198 adds up to 90 days of incarceration to a sentence in comparison to early release under Wis. Stat. § 302.113 (2009-10).

¶56 Kemper counters that the change in the law introduced by Wis. Stat. § 973.198 was merely procedural. Although a procedural change may have a substantive impact that violates the ex post facto clauses, Kemper asserts that the speculative and attenuated possibility of an increase in an inmate's actual term of confinement is not an ex post facto law. See, e.g., Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995). Relying on Dobbert v. Florida, 432 U.S. 282, 293-94 (1977), he argues that § 973.198 may have altered the methods employed in

22

determining the punishment imposed, but did not change the quantum of punishment attached to the crime.

¶57 According to Kemper, Wis. Stat. § 973.198 does not violate the ex post facto clauses because the sentencing court retained discretion to grant or deny an inmate's request for positive adjustment time under both laws. Thus he asserts that any claim of increased confinement § 973.198 would be too speculative and attenuated to constitute an ex post facto violation. We disagree with Kemper because the unavoidable delay in an inmate's release under Wis. Stat. § 973.198 is neither speculative nor attenuated.

¶58 Kemper's reliance on Dobbert is misplaced. In Dobbert, the defendant argues that a change in the role of the judge and jury in the imposition of the death sentence constituted an ex post facto violation. 432 U.S. at 292. The Dobbert court determined that the law at issue in that case was clearly procedural because "there was no change in the quantum of punishment attached to the crime." Id. at 293-94. Unlike in Dobbert, Wis. Stat. § 973.198 may increase an inmate's incarceration by up to 90 days.

¶59 In Morales, the United States Supreme Court addressed the issue of when a claim of increased confinement is too speculative and attenuated to constitute an ex post facto violation. 514 U.S. 499. Morales involved a change to the frequency of parole suitability hearings that is distinguishable from the facts of this case as well as Weaver, 450 U.S. 24,

23

Lindsey v. Washington, 301 U.S. 397 (1937), and Miller v. Florida, 482 U.S. 423 (1987). See Morales, 514 U.S. at 507-08.

¶60 The amendment at issue in Morales made only one change to the law. 541 U.S. at 507. It introduced the possibility that after the initial parole hearing, the board would not have to hold another hearing for two years if it found no reasonable probability that the inmate would be deemed suitable for parole during that period. Id. Rather than changing the sentencing range for an offense, the amendment altered the method to be followed in fixing a parole release date under identical substantive standards. Id. at 507-08.

¶61 Morales explained that many legislative adjustments to parole and sentencing procedures might produce "some remote risk of impact on a prisoner's expected term of confinement." Id. at 508. As examples, Morales identified certain "innocuous adjustments" such as changes to the membership of the board of prison terms or restrictions on hours that inmates may use the prison library. Id.

¶62 The changes to early release under Wis. Stat. § 973.198 are not innocuous adjustments. An inmate who would have been released on his eligibility date under the now repealed Wis. Stat. § 302.113 (2009-10), cannot file a petition for release until he reaches that same date. Then, the procedure for obtaining release will take up to 90 days after the petition is filed. Thus, § 973.198 increases the length of incarceration for every inmate who is eligible for early release based on positive adjustment. This arbitrary increase in

24

punishment violates the ex post facto clauses of the Wisconsin and United States constitutions.

¶63 We agree with Singh that this court's decision in State ex rel. Mueller v. Powers, 64 Wis. 2d 643, 221 N.W.2d 692 (1974), is analogous. In Mueller, inmates in the state prison system sought a declaration that a change in the law that extended their initial eligibility date for parole from two years to five years into their imprisonment violated the ex post facto clauses of the Wisconsin and United States Constitutions. Id. at 645.

¶64 This court determined that the statute at issue in Mueller was unconstitutional because the new law increased "the time that must be served by petitioners before they are eligible for parole consideration from two to five years in a very real and practical sense imposes an additional penalty and violates the constitutional inhibition against ex post facto legislation." Id. at 647. Likewise, Wis. Stat. § 973.198 imposes additional punishment because it increases the time served by inmates before they are eligible for early release.

¶65 This opinion should not be read to revive the alternative definition of an ex post facto violation stated in Mueller as any law "which alters the situation of the accused to his disadvantage." Id. at 646 (citation omitted). In Thiel, 188 Wis. 2d at 703, this court withdrew this language from Mueller, explaining that an ex post facto violation must increase the punishment for an offense, not simply alter the situation of a defendant to his disadvantage.

25

¶66 Although important to note, this discrete narrowing of Mueller does not affect the issues in this case. Mueller's conclusion that changing parole eligibility from two years to five years is an ex post facto violation is also based on the proper legal standard that it "imposes an additional penalty." 64 Wis. 2d at 647. Likewise, Singh argues that the up to 90 day delay in release under Wis. Stat. § 973.198 imposes an additional penalty that was not imposed under the prior law.

¶67 A similar conclusion reached by the United States Supreme Court further supports this court's determination. In Weaver, 450 U.S. at 26, the court determined that a change in Florida's "gain time for good conduct" statute extended the time that inmates were required to spend in prison. Similar to the statutory change at issue in this case, the Florida law "reduce[d] the number of monthly gain-time credits available to an inmate who abides by prison rules and adequately performs his assigned tasks." Id. at 33. The Weaver court explained that "this reduction in gain-time accumulation lengthens the period that someone in petitioner's position must spend in prison." Id.

¶68 Under both Wisconsin and United States Supreme Court precedent, a retroactive change in the law that increases the length of an inmate's sentence violates the ex post facto clauses. We agree with Singh that under Wis. Stat. § 973.198, inmates who are eligible for positive adjustment time are released up to 90 days later than under 2009 Wis. Act 28. Thus, we conclude that § 973.198 violates the constitutional

26

prohibition against ex post facto laws and that the circuit court erred when it dismissed the writ of habeas corpus.

V

¶69 I would remand to the circuit court to address whether under the current circumstances it is now appropriate to grant the writ and what additional relief, if any, is warranted. Although Singh has been released from prison, he remains on extended supervision which is considered "custody" for the purposes of a writ of habeas corpus.

¶70 United States Supreme Court precedent leaves "no doubt" that in addition to physical imprisonment, there are other restraints on liberty that are considered "custody for habeas corpus purposes——including post-release supervision:

> History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus.

Jones v. Cunningham, 371 U.S. 236, 240 (1963); see also Earley v. Murray, 451 F.3d 71, 75 (2d Cir. 2006) ("[p]ost-release supervision, admitting the possibility of revocation and additional jail time, is considered to be 'custody'" for the purposes of habeas corpus.).

¶71 Following the clear directive in Jones, the Wisconsin court of appeals explained that it is "settled" that habeas corpus does not require actual physical imprisonment. State ex rel. Wohlfahrt v. Bodette, 95 Wis. 2d 130, 133-34, 289

27

N.W.2d 366 (1980).   Rather, the focus is on whether one is subject to restraints not shared by the public generally:

> Reviewing federal law, we find that federal habeas corpus is available to one "in custody."  It is settled that the use of habeas corpus has not been limited to situations where the applicant is in actual physical custody, but is available to one subject to restraints not shared by the public generally.  It has been held that the language "in custody" is synonymous with "restraint of liberty."

Id.

¶72 At oral argument, Singh's counsel suggested that changing the conditions of extended supervision or reducing the term of extended supervision may be appropriate remedies in this case.  As the United States Supreme Court explained in Carafas v. Lavallee, 391 U.S. 234, 239 (1968), "the [federal habeas corpus] statute does not limit the relief that may be granted to discharge of the applicant from physical custody.  Its mandate is broad with respect to the relief that may be granted.  It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'"

¶73 Although the law may be well settled on this issue, the facts of this case certainly are not.  The facts of this case have been a moving target, in part due to the disposition of at least one of the number of post-conviction motions that Singh has filed.  At oral argument, this court learned for the first time that Singh's sentence for the 2008 offense was modified to one year in jail, but we do not know the grounds for this modification.  Apparently, Singh also received credit for

time served and had the extended supervision portion of the sentence vacated. See Justice Ziegler's concurrence/dissent, ¶149.

¶74 As one of the dissents acknowledges, there are questions of fact in this case relevant to the issue of whether Singh is entitled to positive adjustment time that cannot be answered by reference to the evidentiary record before this court. See generally Chief Justice Roggensack's dissent, ¶218-21. For instance, the dissent states that there was an opportunity for Singh to earn positive adjustment time on the July 2011 offense which had the potential to be an ex post facto violation, but "from the record before us, it is not possible to make that factual determination . . . ." Id. ¶218. See also id. ¶219 ("The potential for an ex post facto violation on the second crime due to repeal of PAT is not possible to determine due to the following circumstances presented by this case . . . "); id., ¶200 ("His first day of confinement for the July 25, 2011 crime is uncertain due to the modification of the Waukesha County Judgment"); id., ¶221 ("It may be that Singh can prove, as a factual matter, that he was confined on the second sentence longer than should have occurred and that some type of relief may be accorded . . . )"; Justice Ziegler's concurrence/dissent, ¶148 n.10 ("It is unclear from the record exactly what date this petition was filed . . .").

¶75  Because this court is not a fact-finding court, the circuit court is better suited to make a determination regarding whether Singh is entitled to relief.[10]  See, e.g., Mitchell Bank v. Schanke, 2004 WI 13, ¶84, 268 Wis. 2d 571, 676 N.W.2d 849 (remanding to the circuit court for specific findings because "this court is not a fact-finding body.  The circuit court is better suited to make these precise determinations.").  Accordingly, I would remand to the circuit for a determination of whether under the current circumstances it is now appropriate to grant the writ and what additional relief, if any, is warranted.

VI

¶76  In sum, we conclude that because the early release provisions of 2009 Wis. Act 28 were in effect when Singh was convicted and sentenced for the first offense, as well as at the time he committed the second offense, retroactive repeal of positive adjustment time in 2011 Wis. Act 38 violates the ex post facto clauses of the Wisconsin and United States Constitutions.  We also conclude that Wis. Stat. § 973.198 violates the constitutional prohibition against ex post facto

---

[10] Justice Ziegler's concurrence/dissent reaches out for facts that are not in the record and were not briefed or argued by either party.  For example, the concurrence/dissent conducted a DOC Offender Locator internet search to try to determine Singh's maximum discharge date.  Justice Ziegler's concurrence/dissent, ¶149 & n.12.  It seems to want to gather facts not of record and based upon these uncertain facts to deny Singh any relief.

laws because it makes the punishment for an offense more burdensome after it was committed.

¶77 Accordingly, we affirm the court of appeals' determination that the retroactive repeal of positive adjustment time is an ex post facto violation, but reverse its determination that Wis. Stat. § 973.198 does not violate the constitutional prohibition against ex post facto laws. Additionally, I would remand the cause to the circuit court for a determination of whether under the current circumstances it is now appropriate to grant the writ and what additional relief, if any, is warranted.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part.

¶78 DAVID T. PROSSER, J. *(concurring).* This complicated case presents numerous issues for the court. Some are factual; some are legal. Sorting out these issues is indispensable to understanding this case. Recognizing the multitude of fact situations that will be affected by our decision is critical in explaining the law.

I

¶79 The petitioner, Aman D. Singh (Singh), has been convicted of multiple offenses. Three of his convictions are pertinent to this case.

¶80 On December 8, 2008, Singh was charged in Waukesha County with five counts of violating Wis. Stat. § 961.43(a), a Class H felony. His offenses were committed in 2008. On March 29, 2010, he pled guilty to Count 1 of the Complaint. He was sentenced on April 29, 2010.

¶81 On August 26, 2011, Singh was charged with two additional counts of violating Wis. Stat. § 961.43(a), still Class H felonies, in Milwaukee County. He also was charged with a misdemeanor. The felonies were committed on July 25, 2011, and August 10, 2011. Singh pled guilty to all three charges on November 9, 2011, and he was sentenced on December 29, 2011.

II

¶82 In June 2009 the legislature passed and the governor approved the executive budget for the 2009-11 biennium. Included in the budget were extensive changes to Wis. Stat. § 302.113, which is entitled "Release to extended supervision

1

for felony offenders not serving life sentences." The changes to § 302.113 did not take effect until October 1, 2009.

¶83 Prior to this effective date, the statute required most inmates sentenced to prison to serve the full confinement portion of their sentence. Wis. Stat. § 302.113(2) (2007-08). There were several exceptions to this general rule.

¶84 The 2009 legislation made numerous changes in the sentencing law, including changes that permitted certain persons[1] sentenced to prison to earn "positive adjustment time" (PAT) that shortened the period of confinement before these persons were released to extended supervision. See 2009 Wis. Act 28, §§ 2720-2733.[2] Pertinent to this case, Wis. Stat. § 302.113(2) was amended to add paragraph (b), which read, in part,

> (b) An inmate sentenced under s. 973.01 for a misdemeanor or for a Class F to Class I felony that is not a violent offense, as defined in s. 301.048(2)(bm)1., may earn one day of positive adjustment time for every 2 days served that he or she does not violate any regulation of the prison or does not refuse or neglect to perform required or assigned duties. An inmate convicted of a misdemeanor or a Class F to Class I felony that is not a violent offense, as defined in s. 301.048(2)(bm)1., shall be

---

[1] Wisconsin Stat. § 973.01(3d)(b) (2009-10) made PAT unavailable to persons determined by the DOC to "pose[] high risk of reoffending."

[2] For additional context regarding recent amendments to Wisconsin's sentencing laws, see Cecelia Klingele, The Early Demise of Early Release, 114 W. Va. L. Rev. 415, 436-39 (2012); Jesse J. Norris, The Earned Release Revolution: Early Assessments and State-Level Strategies, 95 Marq. L. Rev. 1551, 1566 (2012); Michael O'Hear, Good Conduct Time for Prisoners: Why (and How) Wisconsin Should Provide Credits Toward Early Release, 98 Marq. L. Rev. 487, 504-07 (2014).

released to extended supervision when he or she has served the term of confinement in prison portion of his or her bifurcated sentence, as modified by the sentencing court under s. 301.045(3m)(b)1. or 302.05(3)(c)2.a., if applicable, less positive adjustment time he or she has earned.

¶85 Section 9311(4) of 2009 Wis. Act 28 provided that Section 302.113(2) of the statutes first applies "to a person sentenced on December 31, 1999." In other words, Wis. Stat. § 302.113(2)(b) applied retroactively to persons <u>sentenced</u> on or after December 31, 1999.

¶86 The budget bill contained a sentence stating that § 302.113(2)(b) did <u>not</u> apply prospectively to a "person sentenced on or after the effective date of the subdivision." However, the governor vetoed that sentence.

¶87 The 2009 legislation also created Wis. Stat. § 302.113(2)(c), which prescribed the procedures for releasing an inmate to extended supervision after he or she accrued PAT:

> 302.113(2)(c)1. When an inmate is within 90 days of release to extended supervision under par. (b), the department shall notify the sentencing court that it intends to modify the inmate's sentence and release the inmate to extended supervision under par. (b), and the court may hold a review hearing. If the court does not schedule a review hearing within 30 days after notification under this subsection, the department may proceed under par. (b).

¶88 In 2011 the legislature passed 2011 Wis. Act 38, which substantially revised the law with respect to early release to extended supervision. Section 38 of the new legislation repealed the PAT provisions in Wis. Stat. § 302.113(2)(b) that were created during the previous legislative session.

3

¶89 Section 39 of the Act also repealed the release procedures specified in Wis. Stat. § 302.113(2)(c) (2009-10). In their place, Section 96 of the Act created Wis. Stat. § 973.198:

> 973.198 Sentence adjustment; positive adjustment time. (1) When an inmate who is serving a sentence imposed under s. 973.01 and who has earned positive adjustment time under s. 302.11, 2009 stats., or under s. 304.06, 2009 stats., has served the confinement portion of his or her sentence less positive adjustment time earned between October 1, 2009, and the effective date of this subsection . . . [LRB inserts date], he or she may petition the sentencing court to adjust the sentence under this section, based on the number of days of positive adjustment time the inmate claims that he or she has earned.
>
> (3) Within 60 days of receipt of a petition filed under sub. (1), the sentencing court shall either deny the petition or hold a hearing and issue an order relating to the inmate's sentence adjustment and release to extended supervision.
>
> (5) If the court determines that the inmate has earned positive adjustment time, the court may reduce the term of confinement in prison by the amount of time remaining in the term of confinement in prison portion of the sentence, less up to 30 days, and shall lengthen the term of extended supervision so that the total length of the bifurcated sentence originally imposed does not change.
>
> (6) An inmate who submits a petition under this section may not apply for adjustment of the same sentence under s. 973.195 for a period of one year from the date of the petition.

(Alterations in original.)

¶90 New Section 973.198 preserved for an inmate the PAT that had been earned between October 1, 2009 and August 3, 2011, but it prevented the inmate from taking full advantage of what had been earned by delaying the date for the inmate's petition

4

until the date the inmate was eligible for release, which took into account the period of confinement reduced by the PAT earned under the repealed 2009 law.

## III

¶91 Evaluation of the changes to the law at issue in this case is grounded in three dates: December 31, 1999; October 1, 2009; and August 3, 2011. To help the reader understand the big picture, the following discussion will refer to four periods of time based on these dates.

¶92 First, the "PAT window" refers to the time period beginning October 1, 2009, and ending on August 3, 2011. 2009 Wis. Act 28 made PAT available under Wis. Stat. § 302.113(2)(b) for inmates <u>sentenced</u> for eligible crimes during this time period.

¶93 Second, the "retroactivity window" refers to the time period beginning on December 31, 1999, and ending on September 30, 2009——the day before October 1, 2009. Section 9311(4) of 2009 Wis. Act 28 made PAT available to inmates <u>sentenced</u> for eligible crimes during the retroactivity window.

¶94 Third, the period of time <u>before</u> December 31, 1999.

¶95 Fourth, the period of time <u>after</u> August 3, 2011, the date 2011 Wis. Act 38 repealed the PAT provisions in Wis. Stat. § 302.113(2)(b).

¶96 Every relevant "event" described below occurs in one of these four time periods. The court must consider the dates of the following events: (1) the date a person <u>committed</u> an eligible offense; (2) the date the person was <u>sentenced</u> for the

5

eligible offense; (3) the date the person's <u>confinement began</u> as part of the person's bifurcated sentence; and (4) the date the person's <u>confinement ended</u> as part of that sentence.

¶97 Examining the four time periods in conjunction with the four events reveals 35 categories of persons who might be analyzed for possible ex post facto impact following the 2011 change in the law.[3] The chart in the Appendix lists the 35 categories of persons.

---

[3] Calculating the total number of combinations of dates and events is a question of mathematics. The product rule is a fundamental mathematical principle: "[S]uppose that A is a set of a objects and B is a set of b objects. Then the number of ways to pick one object from A and then one object from B is a x b." Fred S. Roberts & Barry Tesman, <u>Applied Combinatorics</u> 17 (2d ed. 2009) (emphasis omitted). For example, a guest attending a wedding might have two choices of appetizer (soup or salad) and three choices of main course (beef, chicken, or vegetarian). To determine the total number of combinations of appetizers and main courses available to each guest, multiply the number of appetizers (2) times the number of main courses (3) for a total of 6 possible combinations of appetizers and main courses.

Applying the product rule to the dates and events under review in this case returns 256 different combinations of relevant events and time periods. A person convicted of an eligible offense may have committed the offense during any of the four time periods, been sentenced for the offense during any of the four time periods, begun serving the confinement portion of a sentence during any of the four time periods, and ended the confinement portion of the sentence during any of the four time periods. This means that a person could have committed an eligible crime before December 31, 1999, during the retroactivity window, during the PAT window, or after August 3, 2011. Because we consider four time periods for each relevant event, we multiply 4 x 4 x 4 x 4 to return 256 combinations of events and time periods.

Fortunately, the laws of physics render impossible most of the 256 combinations of time periods and events. As one example, it is impossible for a person who committed an eligible

(continued)

¶98 Thirteen categories on the chart are clearly irrelevant to any ex post facto analysis.

- Categories 1-10 are irrelevant because the legislature never made PAT available to persons sentenced before December 31, 1999, for committing an eligible offense. The 2011 changes in the law had no effect upon persons in these categories.

- Categories 11 and 21 are irrelevant because persons in these categories ended the confinement portion of their sentences before October 1, 2009. These persons ended their confinements before the legislature created PAT and thus never qualified for it.

- Category 35 is irrelevant because the legislature never made PAT available to persons who committed an "eligible" offense after August 3, 2011.

¶99 Seven additional categories may be removed from consideration because they involve persons who ended the confinement portion of their sentences before August 3, 2011. Whether sentenced during the retroactivity window, as were persons in categories 12, 14, 22, and 24, or during the PAT window, as were persons in categories 17, 27, and 31, these persons were eligible to accrue PAT during the portions of their confinement that overlapped with the PAT window. Any PAT earned

_____

offense after August 3, 2011, to end the confinement portion of the sentence for that offense before December 31, 1999. Removing temporally impossible combinations leaves 35 remaining categories of persons.

7

should have been applied to their sentences of confinement to accelerate their release to extended supervision. The 2011 law change had no effect on these persons absent additional facts not stated. Removing these additional 7 categories reduces the number of relevant categories to 15.

¶100 The persons in the remaining 15 categories[4] did not end the confinement portion of their prison sentences until after the legislature changed the law in 2011 to end PAT. These persons are entitled to all the PAT, if any, that they earned during the PAT window. That time was preserved by the 2011 legislation.

¶101 What is at issue here is whether persons in these 15 categories are entitled to earn PAT after August 3, 2011.

¶102 The 2011 statute does not seem to permit <u>any</u> person to earn PAT after August 3, 2011. However, some inmates committed eligible offenses, were sentenced on their offenses, and commenced their confinement within the PAT window. Theoretically, these inmates have the strongest case under the Ex Post Facto Clauses to challenge the termination of their ability to earn PAT after August 3, 2011. It must be remembered, however, that the 2009 legislation treated inmates who were <u>sentenced</u> for eligible offenses during the retroactivity window exactly the same as inmates who committed offenses and were sentenced during the PAT window.

---

[4] To be clear, the remaining 15 categories are 13, 15, 16, 18, 19, 20, 23, 25, 26, 28, 29, 30, 32, 33, and 34.

¶103 Consequently, the court must analyze whether categories of persons who either committed eligible offenses or were sentenced for such offenses during the retroactivity window are qualified to make the same ex post facto claims as categories of persons who committed eligible offenses and were sentenced during the PAT window. Once this issue is resolved, the question must be answered whether any categories of persons are entitled, under ex post facto principles, to earn PAT after August 3, 2011.

IV

¶104 By enacting 2009 Wis. Act 28, the legislature not only prospectively changed the law of sentencing beginning on October 1, 2009, but also changed all sentences imposed during the retroactivity window for eligible inmates who committed eligible crimes. This change to the law had an immediate mitigating effect on confined persons sentenced during the retroactivity window. Although at sentencing these persons anticipated that their confinement would last for the entire term specified by the sentencing court, 2009 Wis. Act 28 gave them the opportunity to earn PAT and thereby reduce the length of their confinement.

¶105 Notably, the mitigation of these persons' sentences turned upon the date of sentencing, rather than the date on which they committed the underlying eligible offense. See 2009 Wis. Act 28, § 9311(4) ("[T]he creation of section[] 302.113(2)(b) . . . of the statutes first appl[ies] to a person sentenced on December 31, 1999."). The legislature extended the mitigating effects of PAT to all qualified persons sentenced on

9

or after December 31, 1999——regardless of whether they committed an eligible offense before or after that date. Furthermore, a person who committed an eligible offense during the retroactivity window might nevertheless have gained access to PAT if he or she received a sentence during the PAT window.

¶106 After October 1, 2009, a person sentenced for an eligible offense during the retroactivity window had an expectation of PAT access identical to that of a person sentenced during the PAT window. Because 2011 Wis. Act 38 eliminated the opportunity to continue earning PAT for persons sentenced during the retroactivity window and persons sentenced during the PAT window, both groups experienced the same increase in the term of confinement. Accordingly, we can analyze both groups together when determining whether the repeal of PAT after August 3, 2011, violated the constitutional prohibitions on ex post facto laws.

V

¶107 Under the United States Constitution, "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . " U.S. Const. art. I, § 10, cl. 1. Wisconsin's Constitution provides: "No bill of attainder, ex post facto law, nor any law impairing the obligations of contracts, shall ever be passed . . . ." Wis. Const. art. I, § 12. "We have long looked to the pronouncements of the United States Supreme Court in construing the Ex Post Facto Clause of the Federal Constitution as a guide to construing the Ex Post Facto Clause of the Wisconsin

10

Constitution." State v. Thiel, 188 Wis. 2d 695, 699, 524 N.W.2d 641 (1994) (footnote omitted).

¶108 The Supreme Court of the United States conducted an extensive review of its own Ex Post Facto Clause jurisprudence in Collins v. Youngblood, 497 U.S. 37 (1990). In an opinion by Chief Justice Rehnquist, the Court began with language from Calder v. Bull, 3 U.S. (3 Dall.) 386 (1798), in which Justice Samuel Chase "expounded those legislative Acts which in his view implicated the core concern of the Ex Post Facto Clause." Collins, 497 U.S. at 41-42.

¶109 Justice Chase described four types of laws that he understood to contravene the constitutional prohibition:

> I will state what laws I consider ex post facto laws, within the words and the intent of the prohibition. 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

Calder, 3 U.S. (3 Dall.) at 390 (opinion of Chase, J.) (emphasis omitted).

¶110 Characterizing the language from Justice Chase's Calder opinion as a comprehensive explanation of ex post facto laws, the Supreme Court in Collins emphasized a twentieth century formulation of the definition from Beazell v. Ohio, 269 U.S. 167 (1925):

11

It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.

Collins, 497 U.S. at 42 (quoting Beazell, 269 U.S. at 169-70).

¶111 After the Supreme Court decided Collins, this court reviewed Wisconsin's ex post facto jurisprudence in State v. Thiel, 188 Wis. 2d 695, 524 N.W.2d 641 (1994). In that case, this court acknowledged that "Collins underscored that the proper definition of an ex post facto law is the definition originally stated in Calder and later summarized in Beazell." Thiel, 188 Wis. 2d at 702.

¶112 Two of my colleagues have written at length regarding Singh's first eligible offense, which he committed during the retroactivity window and for which he was sentenced during the PAT window. They argue that, when determining whether a subsequent act of the legislature is unconstitutional, ex post facto analysis should look solely to the law as it was at the time of the commission of the offense. Chief Justice Roggensack's dissent, ¶217 ("Because the August 3, 2011 repeal of PAT caused the law to be as it was in 2008 when Singh committed the first of his crimes, the 2011 legislation did not impose punishment that was greater than it was at the time Singh committed the first of his crimes."); Justice Rebecca G. Bradley's dissent, ¶234 ("The 2011 law does not increase Singh's sentence attached to the 2008 crime because it makes no change

12

to the punishment that existed at the time Singh committed the 2008 crime.").[5]

¶113 I am not persuaded that ex post facto analysis is always limited to mere comparison of the law as it existed at two discrete times. To say that the 2011 legislation repealing PAT is not an unconstitutional ex post facto law because the punishment in 2011 is the same as the punishment in 2008 fails

---

[5] The exclusive use of the date on which a person committed an eligible offense carries with it a concerning implication: the legislature could have entirely eliminated PAT earned by certain inmates during the PAT window. As Justice Rebecca Bradley sets forth the argument,

> At the time Singh committed the 2008 crime, the PAT opportunity did not exist; therefore, 2011 Wis. Act 38's repeal of it does not implicate any ex post facto concerns regarding the 2008 crime. The 2011 law does not increase Singh's sentence attached to the 2008 crime because it makes no change to the punishment that existed at the time Singh committed the 2008 crime.

Justice Rebecca G. Bradley's dissent, ¶234 (footnote omitted).

Consider a person who committed and was sentenced for an eligible offense before October 1, 2009, served the confinement portion of a prison sentence during the entire PAT window, and continued that confinement after August 3, 2011. If ex post facto analysis is limited to a strict focus on the date of commission of the offense, then the legislature could have eliminated all PAT earned by that person during the PAT window without implicating ex post facto concerns because eliminating the earned PAT would "make[] no change to the punishment that existed" when the crime was committed before October 1, 2009. Under such an analysis, the 2011 repeal of PAT would seem to survive constitutional scrutiny for ex post fact purposes even without the reasonable preservation of earned PAT set forth in Wis. Stat. § 973.198 (2013-14).

13

to acknowledge the objective evolution of the law in the interim period.

¶114 In Wisconsin, "No law repealed by a subsequent act of the legislature is revived or affected by the repeal of such repealing act." Wis. Stat. § 990.03(1) (2013-14); see also Goodno v. City of Oshkosh, 31 Wis. 127, 130 (1872) ("The original section, as an independent and distinct statutory enactment, ceased to have any existence the very moment the amendatory act was passed and went into effect . . . . The original section, as a separate statute, was as effectually repealed and obliterated from the statute book, as if the repeal had been made by direct and express words . . . .").

¶115 The 2011 legislation repealing PAT did not "reinstate" the statutory scheme for punishment as it existed before October 1, 2009. Rather, in 2011 the legislature amended the punishment scheme for the second time in as many legislative sessions. An appropriate analysis requires review of the ex post facto consequences of the change in the law in 2009, followed by review of the further changes to the law in 2011. Comparing the punishment for eligible crimes in 2011 to the punishment for the same crimes in 2008 is not sufficient where 2009 Wis. Act 28 retroactively altered the law as it existed in 2008.

¶116 Clearly, the retroactive creation of PAT in 2009 was not unconstitutional. "Although the Latin phrase 'ex post facto' literally encompasses any law passed 'after the fact,' it has long been recognized . . . that the constitutional prohibition on ex post facto laws applies only to penal statutes

14

which disadvantage the offender affected by them." Collins, 497 U.S. at 41; see also Dobbert v. Florida, 432 U.S. 282, 294 (1977) ("It is axiomatic that for a law to be ex post facto it must be more onerous than the prior law."). Consequently, 2009 Wis. Act 28 did not violate the prohibitions on ex post facto laws by retroactively reducing the confinement period of some sentences imposed during the retroactivity window.

¶117 Resolving whether the 2011 legislation repealing PAT constituted an unconstitutional ex post facto law, however, requires a more careful review. Before proceeding to an analysis of whether eliminating the opportunity to earn PAT after it had been granted actually makes the punishment for eligible offenses more burdensome, it is necessary to determine who may claim an ex post facto violation in this case.

¶118 As stated already, see supra Part IV, the repeal of PAT had an identical effect on persons sentenced during the retroactivity window and persons sentenced during the PAT window by depriving both groups of the opportunity to earn PAT after August 3, 2011. In effect, the legislature created a statutory entitlement to PAT mitigating confinement for any person sentenced for an eligible offense during the retroactivity window or the PAT window. See Garner v. Jones, 529 U.S. 244, 258 (2000) (Scalia, J., concurring) ("A statutory parole system that reduces a prisoner's sentence by fixed amounts of time for good behavior during incarceration can realistically be viewed as an entitlement——a reduction of the prescribed penalty——rather than a discretionary grant of leniency.").

15

¶119 Because the legislature in 2009 created that entitlement to a sentence with confinement mitigated by PAT for persons sentenced during either the retroactivity window or the PAT window, the 2011 legislation withdrew a continued opportunity to earn PAT from both groups. A change in the law that "makes more onerous the punishment for crimes committed before its enactment . . . runs afoul of the prohibition against ex post facto laws." Weaver v. Graham, 450 U.S. 24, 35-36 (1981). Eliminating access to PAT after August 3, 2011, for persons sentenced during the retroactivity window and the PAT window risked making the punishment more burdensome: where they previously had an opportunity to mitigate their term of confinement, the 2011 legislation guaranteed that many of those inmates would be required to serve a longer period of confinement than they would have had the law not been changed.

¶120 Though people sentenced during the retroactivity window and PAT window did not necessarily contemplate PAT at the time they committed eligible crimes, the legislature in 2009 saw fit to mitigate——retroactively or prospectively——all of their sentences when it created PAT. To say that ex post facto analysis is inappropriate because the law changed only after people were sentenced is to deny the plain fact that the 2011 legislative action risked making more severe the term of

confinement for persons already in prison.[6] Accordingly, it is appropriate to consider persons sentenced during the retroactivity window and the PAT window alongside persons who committed eligible offenses during the PAT window when deciding whether the repeal of PAT was an unconstitutional ex post facto law.

¶121 Under the Beazell formulation of the definition of ex post facto laws——embraced by the Supreme Court in Collins and adopted by this court in Thiel——the repeal of PAT in 2011 allegedly "makes more burdensome the punishment for a crime, after its commission." Thiel, 188 Wis. 2d at 700 (quoting Collins, 497 U.S. at 42). In cases where a change in the law is alleged to make the punishment for a crime more burdensome after commission of the offense, "[t]he touchstone of [a court's] inquiry is whether a given change in law presents a '"sufficient risk of increasing the measure of punishment attached to the covered crimes."'" Peugh v. United States, 133 S. Ct. 2072,

---

[6] Chief Justice Roggensack argues that the lead opinion "employs a new definition of ex post facto law when it changes the act from which ex post facto effect is measured to include a temporary change in a law that was repealed subsequent to conviction and sentencing." Chief Justice Roggensack's dissent, ¶214. She contends that "[n]o United States Supreme Court opinion supports the lead opinion's definition of ex post facto law, nor does any opinion from this court." Id., ¶215. But it bears noting that changes in the law after sentencing also occur after commission of the crime. The Ex Post Facto Clauses prohibit legislative action that "makes more burdensome the punishment for a crime, after its commission." State v. Thiel, 188 Wis. 2d 695, 700, 524 N.W.2d 641 (1994) (quoting Collins v. Youngblood, 497 U.S. 37, 42 (1990)). It undermines the prohibition's purpose if the legislature may increase the term of confinement for prisoners after their confinement has begun.

17

2082 (2013) (quoting Garner, 529 U.S. at 250, which had quoted Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995)). "[M]ere speculation or conjecture that a change in law will retrospectively increase the punishment for a crime will not suffice to establish a violation of the Ex Post Facto Clause," but neither must "a law increase the maximum sentence for which a defendant is eligible in order to violate the Ex Post Facto Clause." Id. at 2081-82.

¶122 Here, the repeal of PAT ensured that many persons convicted of eligible offenses would actually serve a longer term of confinement than the mitigated term available by law when they committed the offense or were sentenced for it. Admittedly, a person confined to prison for an eligible offense may engage in behavior that precludes accrual of much, or any, PAT. But that possibility in some cases does not change the fact that the 2011 legislation eliminated PAT's mitigating effect for all eligible persons with eligible sentences who served all or part of their prison sentence after August 3, 2011.

¶123 The Supreme Court has identified as unconstitutionally ex post facto various laws that "had the purpose and effect of enhancing the range of available prison terms." Morales, 514 U.S. at 507 (first citing Lindsey v. Washington, 301 U.S. 397 (1937); then citing Weaver, 450 U.S. 24; and then citing Miller v. Florida, 482 U.S. at 433-34). The cases discussed in Morales involved unconstitutional laws that amended state sentencing guidelines that were "intended to, and did, increase the

18

'quantum of punishment'" for crimes in the category at issue, Miller, 482 U.S. at 433-34; reduced "gain-time accumulation" so as to "lengthen[] the period that someone . . . must spend in prison," Weaver, 450 U.S. at 33 (overturning Florida statute reducing the number of gain-time days an inmate could earn each month); and "ma[de] mandatory what was before only the maximum sentence," Lindsey, 301 U.S. at 400. See also Peugh, 133 S. Ct. at 2084 ("A retrospective increase in the Guidelines range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an ex post facto violation."); Lynce v. Mathis, 519 U.S. 433, 443 (1997) (explaining that in "post-Weaver cases, [the Court has] . . . considered whether the legislature's action lengthened the sentence without examining the purposes behind the original sentencing scheme," and noting that in Miller, the Court's conclusion that the sentencing guidelines made the punishment more burdensome "rested entirely on an objective appraisal of the impact of the change on the length of the offender's presumptive sentence").

¶124 Cases involving an objective increase in sentence length stand in contrast to those in which the Court concluded that laws permitting discretionary decisions did not have an unconstitutional ex post facto effect. See Garner, 529 U.S. at 256 (declining to conclude that "change in Georgia law lengthened [an inmate's] time of actual imprisonment" where state parole board exercised its discretion to increase time period between parole hearings); Morales, 514 U.S. at 505-07 (concluding that law permitting parole board to schedule

subsequent parole hearings two years in the future rather than annually after initial hearing did not unconstitutionally change "the substantive formula for securing any reductions to [the] . . . sentencing range").

¶125 The repeal of PAT by 2011 Wis. Act 38 hews much closer to the cases involving lengthening of prison terms than to those involving discretionary parole decisions. Even though PAT is contingent on inmate conduct during the term of confinement——meaning that an eligible inmate does not receive PAT as a matter of right without appropriate conduct——the 2011 legislation had the effect of preventing accrual of PAT for perfect behavior after August 3, 2011.

¶126 As a result, eligible persons who were sentenced for eligible offenses during the retroactivity window, eligible persons who were sentenced for eligible offenses during the PAT window, and eligible persons who committed eligible offenses during the PAT window had their imposed or expected sentences transformed. Where they could once expect a term of confinement as mitigated by PAT earned during the entirety of confinement, they could now expect a term of confinement as mitigated by PAT (if any) earned only during the PAT window. For an eligible person who began confinement close in time to August 3, 2011, such a change in the law could mean years added to the length of time he or she could expect to spend in prison, assuming behavior conforming to the standards necessary to earn PAT.

¶127 In 2011 the legislature repealed PAT prospectively not just for persons who committed offenses after August 3, 2011,

but also for persons already eligible to earn PAT based on the dates they committed or were sentenced for eligible offenses. For persons sentenced during the retroactivity window, persons sentenced during the PAT window, and persons who committed offenses during the PAT window, a prohibition on earning PAT after August 3, 2011, creates an obvious and "sufficient" risk that they will serve longer sentences than they would have had PAT not been repealed. Therefore, I would hold that 2009 Wis. Act 38 was an unconstitutional ex post facto law to the extent that it denied those persons the opportunity to earn PAT during confinement after August 3, 2011.[7]

VI

¶128 I agree with the lead opinion's conclusion that the amended release procedure in Wis. Stat. § 973.198 created by 2011 Wis. Act 38 is an unconstitutional ex post facto law because it may lengthen the term of confinement for inmates who have earned PAT by as many as 90 days. Lead op., ¶68. I write separately to emphasize that the amendment to the release procedure for earned PAT clearly results in an ex post facto violation.

¶129 It is important to observe that the amended release procedure necessarily requires more time in confinement for a person who has earned PAT than did the previous procedure. The procedure created in 2009 required the Department of Corrections to notify the sentencing court "within 90 days of release to

---

[7] By the reasoning stated in this opinion, I thus reach the same conclusion as the lead opinion. Lead op., ¶47-48.

21

extended supervision" of an intent to modify a sentence and release a person early because of earned PAT. Wis. Stat. § 302.113(2)(c)1. (2009-10). Thus, a person could complete the review process <u>before</u> the date of eligibility for release and conceivably begin extended supervision on that date.

¶130 The revised procedure created by 2011 Wis. Act 38 makes it impossible for an inmate who has earned PAT to begin extended supervision on the date that PAT makes that person eligible for release from confinement. Under the new procedure, "[w]hen an inmate . . . who has earned positive adjustment time . . . has served the confinement portion of his or her sentence less positive adjustment time . . . , he or she may petition the sentencing court to adjust the sentence." Wis. Stat. § 973.198(1) (2013-14). The sentencing court must hold a hearing on the petition within 60 days of receiving it, and the sentencing court then "may reduce the term of confinement in prison by the amount of time remaining in the term of confinement in prison portion of the sentence, less up to 30 days." Wis. Stat. § 973.198(3)-(5).

¶131 In effect, the result of this change is to reduce by as many as 90 days the amount of PAT that an inmate has earned. An inmate under the new system may not petition for release until the date that the old system would have permitted release. As revised, the release procedure essentially eliminates at least 1 and as many as 90 days of earned PAT.

¶132 Characterizing this change to the release process as "procedural" rather than "substantive" does not save it for

22

constitutional purposes. Although the Supreme Court stated in Dobbert v. Florida, 432 U.S. 282 (1977), that "[e]ven though it may work to the disadvantage of a defendant, a procedural change is not ex post facto," the Court went on to explain that the law at issue in the case was "procedural" because "[t]he new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime." Dobbert, 432 U.S. at 293-94. The legislature has the prerogative to alter the procedure for exercising earned PAT, but we must evaluate whether any changes have a substantive impact on the length of punishment.

¶133 It has already been established that an ex post facto violation occurs when a law retroactively extends the amount of time that a person must spend in prison. "By definition, . . . reduction in gain-time accumulation lengthens the period that someone . . . must spend in prison." Weaver, 450 U.S. at 33. Because the new release procedure eliminates anywhere from 1 to 90 days of earned PAT, the procedure undoubtedly lengthens the term of confinement and therefore also has an unconstitutional effect.

## VII

¶134 To conclude, I return to Singh and review the consequences for him of the law discussed thus far.

¶135 At the outset, I conclude that Singh is not eligible to earn PAT on the offense committed on August 10, 2011. Because that offense was committed after the repeal of PAT on

23

August 3, 2011, Singh has no basis to claim (and does not assert) that he is eligible for PAT on this offense.

¶136 Next, I conclude that Singh is eligible for PAT on the offense committed on July 25, 2011. Because he committed that offense during the PAT window, denying him PAT would unconstitutionally lengthen the term of his confinement. He is eligible to earn PAT during any time confined in prison under sentence for that offense——including any time confined after August 3, 2011.

¶137 Finally, I conclude that Singh is eligible for PAT on the 2008 Waukesha County offense. Because he was sentenced during the PAT window, denying him PAT would unconstitutionally lengthen the term of his confinement. He is eligible to earn PAT during any time confined in prison under that sentence—— including any time confined after August 3, 2011.

¶138 To be clear, Singh has not asked this court to precisely determine how much PAT, if any, he earned while confined under these sentences. As Singh explains in his brief in response to Warden Kemper's cross-petition, "It would be trivial for this Court to assess the specific positive-adjustment-time calculations to which Mr. Singh was entitled. That is particularly so given Mr. Singh's circumstances——his other sentence, and his current status of having been released from prison." Indeed, given the complex factual circumstances relating to these sentences and Singh's time in and out of confinement during the time periods at issue, there is a

distinct possibility that any PAT he earned would not have resulted in his earlier release.

¶139 For the foregoing reasons, I respectfully concur. I agree with many of the conclusions and much of the reasoning in the lead opinion. I would affirm the decision of the court of appeals regarding Singh's eligibility for PAT and reverse the decision of the court of appeals regarding the procedure for securing release pursuant to earned PAT.

# APPENDIX

| Cat. # | Committed | Sentenced | Confinement Begun | Confinement Ended |
|--------|-----------|-----------|-------------------|-------------------|
| 1 | Before 12/31/99 | Before 12/31/99 | Before 12/31/99 | Before 12/31/99 |
| 2 | Before 12/31/99 | Before 12/31/99 | Before 12/31/99 | On/After 12/31/99 & Before 10/1/09 |
| 3 | Before 12/31/99 | Before 12/31/99 | Before 12/31/99 | After 10/1/09 & Before 8/3/11 |
| 4 | Before 12/31/99 | Before 12/31/99 | Before 12/31/99 | After 8/3/11 |
| 5 | Before 12/31/99 | Before 12/31/99 | On/After 12/31/99 & Before 10/1/09 | On/After 12/31/99 & Before 10/1/09 |
| 6 | Before 12/31/99 | Before 12/31/99 | On/After 12/31/99 & Before 10/1/09 | After 10/1/09 & Before 8/3/11 |
| 7 | Before 12/31/99 | Before 12/31/99 | On/After 12/31/99 & Before 10/1/09 | After 8/3/11 |
| 8 | Before 12/31/99 | Before 12/31/99 | After 10/1/09 & Before 8/3/11 | After 10/1/09 & Before 8/3/11 |
| 9 | Before 12/31/99 | Before 12/31/99 | After 10/1/09 & Before 8/3/11 | After 8/3/11 |
| 10 | Before 12/31/99 | Before 12/31/99 | After 8/3/11 | After 8/3/11 |
| 11 | Before 12/31/99 | On/After 12/31/99 & Before 10/1/09 | On/After 12/31/99 & Before 10/1/09 | On/After 12/31/99 & Before 10/1/09 |
| 12 | Before 12/31/99 | On/After 12/31/99 & Before 10/1/09 | On/After 12/31/99 & Before 10/1/09 | After 10/1/09 & Before 8/3/11 |
| 13 | Before 12/31/99 | On/After 12/31/99 & Before 10/1/09 | On/After 12/31/99 & Before 10/1/09 | After 8/3/11 |
| 14 | Before 12/31/99 | On/After 12/31/99 & Before 10/1/09 | After 10/1/09 & Before 8/3/11 | After 10/1/09 & Before 8/3/11 |
| 15 | Before 12/31/99 | On/After 12/31/99 & Before 10/1/09 | After 10/1/09 & Before 8/3/11 | After 8/3/11 |
| 16 | Before 12/31/99 | On/After 12/31/99 & Before 10/1/09 | After 8/3/11 | After 8/3/11 |
| 17 | Before 12/31/99 | After 10/1/09 & Before 8/3/11 | After 10/1/09 & Before 8/3/11 | After 10/1/09 & Before 8/3/11 |
| 18 | Before 12/31/99 | After 10/1/09 & Before 8/3/11 | After 10/1/09 & Before 8/3/11 | After 8/3/11 |
| 19 | Before 12/31/99 | After 10/1/09 & Before 8/3/11 | After 8/3/11 | After 8/3/11 |
| 20 | Before 12/31/99 | After 8/3/11 | After 8/3/11 | After 8/3/11 |
| 21 | On/After 12/31/99 & Before 10/1/09 | On/After 12/31/99 & Before 10/1/09 | On/After 12/31/99 & Before 10/1/09 | On/After 12/31/99 & Before 10/1/09 |
| 22 | On/After 12/31/99 & Before 10/1/09 | On/After 12/31/99 & Before 10/1/09 | On/After 12/31/99 & Before 10/1/09 | After 10/1/09 & Before 8/3/11 |
| 23 | On/After 12/31/99 & Before 10/1/09 | On/After 12/31/99 & Before 10/1/09 | On/After 12/31/99 & Before 10/1/09 | After 8/3/11 |
| 24 | On/After 12/31/99 & Before 10/1/09 | On/After 12/31/99 & Before 10/1/09 | After 10/1/09 & Before 8/3/11 | After 10/1/09 & Before 8/3/11 |
| 25 | On/After 12/31/99 & Before 10/1/09 | On/After 12/31/99 & Before 10/1/09 | After 10/1/09 & Before 8/3/11 | After 8/3/11 |
| 26 | On/After 12/31/99 & Before 10/1/09 | On/After 12/31/99 & Before 10/1/09 | After 8/3/11 | After 8/3/11 |
| 27 | On/After 12/31/99 & Before 10/1/09 | After 10/1/09 & Before 8/3/11 | After 10/1/09 & Before 8/3/11 | After 10/1/09 & Before 8/3/11 |
| 28 | On/After 12/31/99 & Before 10/1/09 | After 10/1/09 & Before 8/3/11 | After 10/1/09 & Before 8/3/11 | After 8/3/11 |
| 29 | On/After 12/31/99 & Before 10/1/09 | After 10/1/09 & Before 8/3/11 | After 8/3/11 | After 8/3/11 |
| 30 | On/After 12/31/99 & Before 10/1/09 | After 8/3/11 | After 8/3/11 | After 8/3/11 |
| 31 | After 10/1/09 & Before 8/3/11 | After 10/1/09 & Before 8/3/11 | After 10/1/09 & Before 8/3/11 | After 10/1/09 & Before 8/3/11 |
| 32 | After 10/1/09 & Before 8/3/11 | After 10/1/09 & Before 8/3/11 | After 10/1/09 & Before 8/3/11 | After 8/3/11 |
| 33 | After 10/1/09 & Before 8/3/11 | After 10/1/09 & Before 8/3/11 | After 8/3/11 | After 8/3/11 |
| 34 | After 10/1/09 & Before 8/3/11 | After 8/3/11 | After 8/3/11 | After 8/3/11 |
| 35 | After 8/3/11 | After 8/3/11 | After 8/3/11 | After 8/3/11 |

¶140 ANNETTE KINGSLAND ZIEGLER, J. *(concurring in part, dissenting in part).* I agree only with the lead opinion's conclusion to affirm in part and reverse in part the court of appeals. The opinion of Justice Ann Walsh Bradley is joined only by Justice Shirley S. Abrahamson. Justice David T. Prosser concurs, but does not join Justice Ann Walsh Bradley's opinion.[1] While Justice Prosser engages in a thorough, reasonable, and persuasive analysis concerning Singh's ex post facto challenge, the facts of this case are so unique that regardless of the ex post facto analysis, the conclusion is the same. As will be discussed in this writing, the peculiar facts of this case leave Singh with no habeas relief.

¶141 As the old adage warns, "bad facts make bad law." This case is a prime example of bad facts, and I am concerned that by undertaking an unnecessary review of the scope of the ex post facto clause we risk creating bad law. Fortunately, we do not need to do so here. I write to explain that under either interpretation of the proper scope of the ex post facto clause proffered by the other members of the court, the result in this unusual case remains the same. Put simply, Singh is due no relief on his writ of habeas corpus. Judicial restraint requires that we resolve cases on the narrowest possible grounds. See, e.g., DOJ v. DWD, 2015 WI 114, ¶29, 365 Wis. 2d 694, 875 N.W.2d 545 ("[W]e are generally obliged to decide our cases on the 'narrowest possible grounds'" (quoting

---

[1] Chief Justice Roggensack and Justice Rebecca G. Bradley have authored separate but dissenting opinions.

1

State v. Subdiaz-Osorio, 2014 WI 87, ¶143, 357 Wis. 2d 41, 849 N.W.2d 748 (Ziegler, J., concurring).)). Accordingly, a decision on the precise scope of the ex post facto clause is unnecessary because Singh is entitled to no habeas corpus relief. Consequently, remand is also inappropriate in this case.

## I. BACKGROUND

¶142 Singh committed an array of offenses between 2008 and 2011, a period of time during which a series of legislative changes to the sentencing statutes was enacted. For example, as of June 30, 2009, the legislature put into effect several early release opportunities for offenders who received sentences for certain eligible offenses after December 1, 1999. See 2009 Wis. Act 28.[2] The program at issue here provided that inmates

---

[2] Creating Wis. Stat. 302.113 (2009-10), which provided in relevant part:

> (1) An inmate is subject to this section if he or she is serving a bifurcated sentence imposed under s. 973.01. An inmate convicted of a misdemeanor or of a Class F to Class I felony that is not a violent offense, . . . and who is eligible for positive adjustment time under sub. (2)(b) . . . may be released to extended supervision under sub. (2)(b) or (9h). . . .

> (2) . . .

> (b) An inmate sentenced under s. 973.01 for a misdemeanor or a Class F to Class I felony that is not a violent offense, as defined in s. 301.048(2)(bm)1., may earn one day of positive adjustment time for every 2 days served that he or she does not violate any regulation of the prison or does not refuse or neglect to perform required or assigned duties. An inmate convicted of a misdemeanor or a Class F to Class I

(continued)

2

serving prison sentences for misdemeanors or nonviolent Class F to Class I felonies could earn one day of "Positive Adjustment Time" (PAT) for every two days served "that he or she does not violate any regulation of the prison or does not refuse or neglect to perform required or assigned duties." Wis. Stat. § 302.113(2)(b) (2009-10).[3] PAT did not decrease the total length of the sentence, but rather allowed inmates to convert one-third of their confinement time into extended supervision time.[4] Wis. Stat. § 302.113(3)(e) ("If an inmate is released to extended supervision under sub. (2)(b) after he or she has served less than his or her entire confinement in prison portion of the sentence imposed under s. 973.01, the term of extended supervision is increased so that the total length of the bifurcated sentence does not change."); § 302.113(2)(a) ("[A]n inmate subject to this section is entitled to release to extended supervision after he or she has served the term of confinement in prison portion of the sentence [as modified by

felony that is not a violent offense, . . . shall be released to extended supervision when he or she has served the term of confinement in prison portion of his or her bifurcated sentence, . . . less positive adjustment time he or she has earned.

[3] All subsequent references to the Wisconsin Statutes will be to the 2009-10 version of the Wisconsin Statutes unless otherwise indicated.

[4] For instance, if an inmate received a bifurcated sentence consisting of three years confinement and three years extended supervision, PAT would allow the sentence to be modified to two years confinement and four years extended supervision. The inmate would be released to extended supervision after serving two years confinement in prison.

the appropriate reviewing entity under the PAT statutes]" (emphasis added).).

¶143 An inmate's eligibility for PAT was not discretionary on the part of the Department of Corrections ("DOC"), but instead was dependent on the classification of the inmate's offense. See Wis. Stat. § 302.113(2)(b) ("An inmate sentenced under s. 973.01 for a misdemeanor or for a Class F to Class I felony that is not a violent offense, . . . may earn one day of positive adjustment time for every 2 days served that he or she does not violate any regulation of the prison or does not refuse or neglect to perform required or assigned duties.") The statutes required the DOC to keep a record of the conduct of each inmate subject to § 302.113. See § 302.113(3)(a). Qualifying inmates were entitled to early release to extended supervision when they had served the confinement portion of their sentences less PAT earned. See § 302.113(2)(b) ("An inmate convicted of a misdemeanor or a Class F to Class I felony that is not a violent offense, . . . shall be released to extended supervision when he or she has served the term of confinement in prison portion of his or her bifurcated sentence, . . . less positive adjustment time he or she has earned."). When an inmate was within 90 days of release to extended supervision based upon PAT earned, the DOC notified the sentencing court that it intended to modify the inmate's sentence. § 302.113(2)(c)1. The sentencing court could, but was not required to, hold a review hearing. Id. ("[T]he [DOC] shall notify the sentencing court . . . and the court may hold a

4

review hearing.") If the sentencing court did not schedule a hearing, the DOC proceeded with release. Id. ("If the court does not schedule a review hearing within 30 days after notification under this subsection, the [DOC] may proceed under par. (b).")

¶144 In 2008, prior to the enactment of the PAT statutes, Singh forged prescriptions for narcotics and was charged in Waukesha County with violating Wis. Stat. § 961.43(a), Obtain Controlled Substance by Fraud, a class H felony. Singh was convicted and sentenced for the 2008 Waukesha County offense in 2010, while PAT was in effect. He received three years probation with six months of conditional jail time and an imposed-and-stayed bifurcated prison sentence consisting of 18 months confinement and 18 months extended supervision, to be served upon revocation. Because he was sentenced for a qualifying offense after December 1, 1999, at the time of sentencing PAT at least arguably applied to the bifurcated prison portion of this sentence.[5]

¶145 While on probation for the 2008 Waukesha offense, Singh committed two offenses in Milwaukee County. The first was committed on July 25, 2011, while PAT was in effect. The PAT statutes were repealed August 3, 2011. Singh committed his

---

[5] Singh did not earn any PAT on this sentence at this time, however, because he was placed on probation and his bifurcated prison sentence was imposed and stayed. Thus, until his probation was revoked, Singh was not "serving a bifurcated sentence imposed under s. 973.01" as required by Wis. Stat. § 302.113. See Wis. Stat. § 302.113(1).

5

second Milwaukee County offense on August 10, 2011, seven days after PAT's repeal. Singh pled guilty to one count of Obtain Controlled Substance by Fraud[6] for the July 25 offense, and to one count of Obtain Controlled Substance by Fraud for the August 10 offense.

¶146 On December 13, 2011, Singh's probation for the Waukesha offense was revoked and his stayed sentence of imprisonment (consisting of 18 months confinement plus 18 months extended supervision) was imposed. He was returned to jail to await sentencing on the Milwaukee County offenses.

¶147 On December 29, 2011, Singh was sentenced for the Milwaukee County offenses. For the July 2011 Milwaukee offense, he was sentenced to 24 months initial confinement and 36 months extended supervision, to be served consecutively to the Waukesha sentence.[7] For the August 2011 Milwaukee offense, he was sentenced to 24 months initial confinement and 36 months extended supervision, to run concurrently to all other sentences. In other words, the August 2011 Milwaukee sentence was concurrent to both the Waukesha sentence (18 months

---

[6] Singh also pled guilty to one count of Obtain Prescription Drug with Fraud in this case. This is an unclassified misdemeanor. See Wis. Stat. § 450.11(7)(a) (2011-12). For this count, he was sentenced to six months in a house of correction, to run concurrently with all sentences. Because this sentence is irrelevant to the issue at hand, I will not discuss it further.

[7] When consecutive sentences are imposed, they are computed as one continuous sentence. Wis. Stat. § 302.113(4). A person serves all terms of confinement before serving any terms of extended supervision. Id.

6

confinement and 18 months extended supervision) as well as the July 2011 Milwaukee sentence (24 months confinement and 36 months extended supervision). Singh's first day in prison was January 4, 2012.[8]

¶148 Singh filed a petition for positive adjustment time on the Waukesha case with the Racine Correctional Institution.[9] When the DOC refused to process his request, Singh filed a petition for a writ of habeas corpus in the Racine County circuit court on June 28, 2013, alleging he was also due PAT on the July 2011 Milwaukee sentence.[10] The DOC filed a motion to quash the writ, which the circuit court granted. The court of appeals reversed in part and affirmed in part, finding that the ex post facto clause required the DOC to allow Singh to earn PAT credit toward his sentences for both his Waukesha and July 2011 Milwaukee offenses. This appeal followed.

---

[8] He received 159 days of credit for the conditional jail time served on the Waukesha sentence, as well as 234 days of confinement time credit for days he spent in jail awaiting hearings and awaiting transfer to the prison. This amounted to a total of 13 months confinement credit toward the Waukesha and July 2011 Milwaukee sentences, which he in fact received.

[9] Singh has filed numerous motions with various entities related to his convictions. I will only discuss those necessary to the disposition of this case.

[10] After his arrival in prison, Singh filed a petition for positive adjustment time on the Waukesha sentence. It is unclear from the record exactly what date this petition was filed. On May 2, 2012, the DOC sent a letter to the circuit court explaining that it refused to verify Singh's eligibility for PAT. Singh's June 2013 petition for a writ of habeas corpus was based upon the DOC's refusal to process his PAT eligibility petition upon his arrival in prison.

¶149 While the appeal was pending before this court, Singh was released to extended supervision.[11] On July 14, 2015, the Waukesha County circuit court modified Singh's sentence to one year in jail with credit for time served and vacated the extended supervision portion of the sentence.[12]

¶150 Consequently, we find the case before us in the following posture: Singh's sentence in the Waukesha case is now one year in jail and has been served. The initial Waukesha bifurcated sentence of imprisonment——18 months confinement and 18 months extended supervision——no longer exists. As for the two Milwaukee concurrent sentences, Singh has served 29 months of confinement and is currently on extended supervision for both the July 2011 and August 2011 Milwaukee offenses. According to the information the DOC is representing to the world at large, Singh's maximum discharge date is now November 28, 2016.[13]

¶151 Nonetheless, I proceed to discuss this case in terms of the sentences that existed when Singh filed his writ of

---

[11] Because Singh's jail credit amounted to 13.1 months and he received no PAT on either sentence, his release-to-extended-supervision date for the consecutive 18-month Waukesha and 24-month July 2011 Milwaukee confinement terms was June 2, 2014 (18 months minus 13 months, plus 24 months, for a total of 29 months from January 4, 2012: June 4, 2014).

[12] The amendment to the Waukesha sentence was not revealed to this court until oral argument. The details of the amended sentence in Waukesha County Case No. 2008CF1368 are available on CCAP (the Consolidated Court Automation Program case management system). Available at https://wcca/wicourts.gov/index.xsl.

[13] This date was obtained using the DOC's Offender Locator search, available at http://offender.doc.state.wi.us/lop/home.do

habeas corpus and at a time when the Waukesha sentence had not been modified so as to moot its consideration of PAT credit. I then will discuss the fact that habeas relief is unavailable to Singh considering the facts as they now exist.

## II.  DISCUSSION

### A.  The Ex Post Facto Clauses

¶152 As a general proposition, the ex post facto clause requires fundamental fairness and that individuals have fair notice of the consequences of their crimes. Both the United States Constitution and the Wisconsin Constitution have ex post facto clauses.[14] We follow United States Supreme Court precedent that interprets the federal constitution's prohibition of ex post facto laws when interpreting the Wisconsin Constitution's ex post facto clause. State v. Thiel, 188 Wis. 2d 695, 699, 524 N.W.2d 641 (1994).

¶153 The Supreme Court of the United States has stated that the purpose of the ex post facto clause is to ensure "that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." Weaver v. Graham, 450 U.S. 24, 28-29 (1981). It is also meant to protect fundamental fairness by making the government "abide by the rules of law it establishes," Carmell v. Texas, 529 U.S. 513, 532 (2000), and to "restrict governmental power by restraining arbitrary and potentially vindictive legislation." Weaver, 450 U.S. at 29.

---

[14] See U.S. Const. art. I, §§ 9 and 10; Wis. Const. art. I, § 12.

9

¶154 Though the Supreme Court has "declined to articulate a single 'formula' for identifying those legislative changes that have a sufficient effect on substantive crimes or punishments to fall within the constitutional prohibition," California Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995), the formulation "faithful to our best knowledge of the original understanding of the Ex Post Facto Clause" is that stated in Beazell v. Ohio, 269 U.S. 167, 169-70 (1925):

> It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.

Collins v. Youngblood, 497 U.S. 37, 42-43 (1990). Following the lead of the Supreme Court of the United States, this court in Thiel adopted verbatim the Beazell formulation of ex post facto laws. Thiel, 188 Wis. 2d at 703.

¶155 Consequently, the ex post facto clause prohibits only those laws that fall into one of the Beazell categories. The fact that the legislature changes a sentencing statute does not automatically entitle a defendant to relief pursuant to the ex post facto clause. Rather, the ex post facto clause provides that "[l]egislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." Collins, 497 U.S. at 43.

¶156 It is the question of whether the repeal of PAT "increased the punishment" for Singh's 2008 Waukesha crime that

10

has divided this court. Some members of this court conclude that the ex post facto clause prohibits the legislature from making the punishment for an offense more burdensome than it was at the time of commission, conviction, or sentencing for an offense. They conclude that because Singh was <u>sentenced</u> in 2010 to bifurcated sentences that included the opportunity to earn PAT, repeal of PAT retroactively increases the punishment Singh received for that offense and is thus an ex post facto law. Other members of this court contend that the ex post facto clause requires only that the punishment for an offense not be made more burdensome than it was on the day the offense was committed. They conclude that because PAT was not the law in 2008 when Singh <u>committed</u> his Waukesha crime, the retroactive repeal of PAT does not increase Singh's punishment for that offense.

¶157 I write to explain that under <u>either</u> articulation of the proper scope of the ex post facto clause, in this case, Singh spent five more months in confinement than he should have due to PAT's retroactive repeal. Thus, as will be demonstrated below, <u>regardless</u> of whether the ex post facto inquiry compares a new law to the law in effect (1) at the time of commission, conviction, or sentencing, or (2) to the law in effect on only the date of the commission of the offense, retroactive repeal of

11

PAT increased Singh's punishment for an offense already committed in doing so and violated the ex post facto clause.[15]

1. PAT for both the 2008 Waukesha and July 2011
Milwaukee Sentences

¶158 If the ex post facto clause requires Singh to earn PAT on both the original Waukesha bifurcated prison sentence and the July 2011 Milwaukee prison sentence, Singh should have been released to extended supervision on January 4, 2014.[16] He was released from confinement five months later. I will explain why this is so.

¶159 Singh's original sentence for the Waukesha offense consisted of 18 months confinement and 18 months extended supervision. A full grant of PAT on that sentence (one-third of 18 months, so 6 months) would change that sentence to 12 months (18 – 6 = 12) confinement and 24 months extended supervision (18 + 6 = 24). The 6 months of PAT credit against confinement prolongs the extended supervision by that same amount so not to

_____

[15] While I recognize that the Waukesha sentence would no longer qualify for PAT because it is a jail sentence, I analyze these sentences in terms of how they existed at the time he filed his request for PAT.

[16] I recognize that the DOC uses certain procedures for calculating release dates and that consequently, an inmate's actual release date does not always correspond exactly to the date upon which the average person would consider that a "month" has passed on the calendar. See, e.g., Wis. Stat. § 302.113(8) ("Releases to extended supervision from prison shall be on the Tuesday or Wednesday preceding the date on which he or she completes the term of imprisonment."). Though small discrepancies in the exact day Singh would have been released in the scenarios given here may exist, they do not impact my analysis.

12

change the overall length of the sentence. See Wis. Stat. § 302.113(3)(e).

¶160 The consecutive July 2011 Milwaukee sentence consisted of 24 months confinement and 36 months extended supervision. A full grant of PAT on that sentence (one-third of 24 months, so 8 months) would change that sentence to 16 months confinement (24 – 8 = 16) and 44 months extended supervision (36 + 8 = 44).

¶161 Singh was otherwise also due approximately 13 months (393 days) of jail credit to the confinement portion of his sentence for time otherwise spent in custody for the Waukesha and July 2011 Milwaukee offenses. This would further affect the sentences so to then require essentially 15 total months of confinement because the Waukesha sentence of 12 months is less than the 13 months credit due, and the remaining July sentence of 16 months would receive the remaining one month of credit in order to give him full credit for the time spent in custody.[17] As was demonstrated above, he would still have 44 months extended supervision, but that part of the sentence would begin only after all confinement was served.

¶162 So, assuming he was due PAT for the Waukesha and July 2011 Milwaukee sentences, Singh should have served 15 months confinement (the Waukesha sentence usurped by the credit due plus 15 months (16 – 1 = 15) for the July 2011 Milwaukee

---

[17] When two consecutive sentences are imposed, jail credit for custody that is connected to both sentences reduces the term of confinement of the "first" sentence to be served. See State v. Boettcher, 144 Wis. 2d 86, 100, 423 N.W.2d 533 (1988).

sentence). Singh's first day in prison on this sentence was January 4, 2012. If Singh was entitled to a full grant of PAT on both sentences, the confinement term of this sentence should have ended March 4, 2013——15 months from January 4, 2012.

¶163 However, Singh would not have been released March 4, 2013, because Singh was also serving the concurrent August 2011 Milwaukee sentence of 24 months confinement and 36 months extended supervision at this time (concurrent to both the above Waukesha sentence and July 2011 Milwaukee sentence). It is undisputed that for the August 2011 Milwaukee offense, Singh was due neither PAT nor jail credit under the statute. The August 2011 Milwaukee sentence also began on January 4, 2012, because it was concurrent to all other sentences (including the Waukesha sentence which came first and began on January 4, 2012). The confinement term on this August 2011 Milwaukee sentence would have thus ended January 4, 2014——24 months from January 4, 2012. As a result, while this concurrent sentence would be the reason for keeping Singh in confinement until January 4, 2014, it could not be the reason for keeping Singh in confinement another five months, as he was, until June 2, 2014.

¶164 Consequently, if the ex post facto clause looks to the law at the time of commission, conviction, or sentencing (as some of my colleagues would conclude), and Singh was due PAT on both the Waukesha sentence and the July 2011 Milwaukee sentence, he should have been released to extended supervision on January 4, 2014, not June 2, 2014. Because the DOC refused to process Singh's PAT request and no court hearing was held, he

14

thus served a full 29 months of confinement (18 – 13 + 24 = 29). He was released June 2, 2014——29 months from the day his sentences began on January 4, 2012.

¶165 The only way to conclude that Singh should have spent 29 months in confinement would be to surmise that he was due no PAT credit on either sentence. Only one of my colleagues would so decide that is the case. Indeed, it is difficult to conclude that he would not be due PAT on at least the July 2011 Milwaukee sentence given the fact that PAT was the law in place on the date of commission of that offense.[18]

¶166 However, as I have otherwise discussed in this section, if the ex post facto inquiry compares a new law to the law in effect at the time of commission, conviction, or sentencing for an offense, PAT's repeal unconstitutionally increased the punishment for Singh's Waukesha and July 2011 Milwaukee offenses and caused him to serve an extra five months confinement. He was released June 2, 2014, and PAT combined with the concurrent August 2011 Milwaukee sentence would have allowed him to be released five months earlier on January 4, 2014, even with consideration of the concurrent August 2011 Milwaukee case.

---

[18] The law in effect on July 25, 2011, when Singh committed the offense, required Singh to serve 16 months confinement in prison on the sentence he received for that offense. The law in effect after PAT's repeal on August 3, 2011, required Singh to serve 24 months confinement in prison on the sentence he received for the same offense. This is an increase in punishment for the July 25, 2011 Milwaukee offense that took effect after July 25, 2011. Under any reading of Beazell and Thiel, the ex post facto clause prohibits this.

2. PAT For Only the July 2011 Milwaukee Sentence

¶167 It seems that all but one of my colleagues could agree that Singh is at least due PAT for the July 2011 Milwaukee sentence which ran consecutive to the earlier Waukesha sentence. Even under this narrower interpretation of the ex post facto clause——comparing a new law only to the law that existed on the date of commission of the offense——PAT's repeal still caused Singh to spend an additional five months in prison. Even according to the narrowest view of the ex post facto inquiry being put forth by members of this court, Singh should have earned PAT on the July 2011 Milwaukee sentence. I will now demonstrate how even under this narrower interpretation, PAT's repeal unconstitutionally required Singh to serve five extra months confinement in prison.

¶168 Singh's original sentence for the Waukesha offense consisted of 18 months confinement and 18 months extended supervision. If no PAT was due on this sentence, it remains as-is.

¶169 The July 2011 Milwaukee sentence consisted of 24 months confinement and 36 months extended supervision and was consecutive to the Waukesha case. A full grant of PAT on that sentence alone (one-third of 24 months, so 8 months) would change that sentence to 16 months confinement (24 – 8 = 16) and 44 months (36 + 8 = 44) extended supervision.

¶170 As has been discussed, Singh was also otherwise due approximately 13 months jail credit on the confinement portion of his sentence. After all confinement is served, he would then

16

begin his 44 months of extended supervision (the concurrent August 2011 sentence of 36 months extended supervision would conclude within this 44 months).

¶171 So, if Singh was due PAT for only the July 2011 Milwaukee sentence, Singh should have served 21 months confinement (18 months for the Waukesha sentence, minus 13 months for sentence credit due, plus 16 months for the July 2011 Milwaukee sentence) (18 – 13 + 16 = 21). Singh's first day in prison on the consecutive sentences was January 4, 2012. If Singh was entitled to PAT on only the July 2011 Milwaukee sentence, the confinement term of his consecutive sentences should have ended October 4, 2013——21 months from January 4, 2012. Below, I will explain why it did not.

¶172 Recall, Singh was also serving the concurrent August 2011 Milwaukee sentence of 24 months confinement and 36 months extended supervision at this time. Singh was due no PAT or jail credit for the August 2011 Milwaukee offense. The August 2011 Milwaukee sentence also began on January 4, 2012. The confinement term on this August 2011 Milwaukee sentence (24 months concurrent, for which all agree no PAT is due) would have nonetheless kept Singh incarcerated until January 4, 2014——24 months from January 4, 2012.

¶173 Consequently, even if the ex post facto clause looks only to the law on the date of commission of the offense and Singh was due PAT only on the July 2011 Milwaukee sentence, Singh still should have been released to extended supervision on January 4, 2014. On that date, he would have completely served

17

his terms of confinement on all three sentences. Because the DOC refused to process Singh's PAT request, he served a full 29 months confinement (18 months for the Waukesha sentence, minus 13 months for sentence credit, plus 24 months for the July 2011 Milwaukee sentence, equals 29 months confinement).

¶174 He was released June 2, 2014——29 months from the day his sentences began on January 4, 2012. Only one of my colleagues asserts that he could never be due PAT for any of the sentences, and thus release on June 2, 2014 (29 months confinement) according to her, is the appropriate term of confinement. The other six members of this court could conclude, however, that Singh is at least due PAT for the July 2011 Milwaukee sentence. Thus, under the facts of this case, all but one justice should agree that Singh should have been required to be released January 4, 2014, as there is no sentence that would have required him to be confined longer.

¶175 Even though it seems apparent that Singh should have been released five months earlier, regardless of whether the ex post facto clause analysis is as stated in section II.A.1., or it is as stated in section II.A.2, the bottom line is that under either analysis, PAT's repeal unconstitutionally increased Singh's punishment by five months confinement in prison. Under the particular facts of this case, Singh however finds himself in the unique position of being entitled to no relief under his petition for habeas corpus. As I will explain below, even if habeas relief may have been appropriate in the past, the writ is not now available to Singh.

18

B. Habeas Corpus

¶176 Habeas corpus is a civil proceeding with origins in the common law, and its availability is guaranteed by the Wisconsin and United States constitutions.[19] State ex rel. Haas v. McReynolds, 2002 WI 43, ¶11, 252 Wis. 2d 133, 643 N.W.2d 771. It is an equitable remedy that is available to a prisoner "when there is a pressing need for relief or where the process or judgment by which a petitioner is held is void." Id. (citation omitted). "The writ of habeas corpus is a procedural device for subjecting executive, judicial, or private restraints on liberty to judicial scrutiny. Where it is available, it assures among other things that a prisoner may require his jailer to justify the detention under the law." Peyton v. Rowe, 391 U.S. 54, 58 (1968). The purpose of the writ "is to protect and vindicate the petitioner's right of personal liberty by releasing the petitioner from illegal restraint." State ex rel. Hager v. Marten, 226 Wis. 2d 687, 692, 594 N.W.2d 791 (1999).

¶177 "Because it is an extraordinary writ, habeas corpus relief is available only where the petitioner demonstrates: (1) a restraint of his or her liberty, (2) which restraint was imposed contrary to constitutional protections or by a body lacking jurisdiction and (3) no other adequate remedy available at law." State v. Pozo, 2002 WI App 279, ¶8, 258 Wis. 2d 796, 654 N.W.2d 12 (citation omitted). Importantly, "a writ will not be issued where the 'petitioner has an otherwise adequate remedy

---

[19] U.S. Const. art. I, § 9, cl. 2; Wis. Const. art. I, § 8, cl. 2.

that he or she may exercise to obtain the same relief.'" Id. (citation omitted).

¶178 With these principles in mind and regardless of whether the principle of fair notice allows either the ex post facto inquiry to (1) compare a new law to the law at the time of commission, conviction, or sentencing for an offense, or (2) compare a new law to the law in effect only at the time of commission of the offense, I conclude that Singh is not entitled to any relief in his petition for habeas corpus.

¶179 In Singh's petition for a writ of habeas corpus, he stated that he was serving a consecutive sentence composed of 18 months initial confinement and 18 months extended supervision for the Waukesha case, and 24 months initial confinement and 36 months extended supervision for the July 2011 Milwaukee case.[20] He contended that denying PAT to inmates who had committed offenses prior to PAT's August 3, 2011 repeal was an ex post facto violation pursuant to the decisions of the Supreme Court of the United States in Weaver v. Graham, 450 U.S. 24 (1981), and Miller v. Florida, 482 U.S. 423 (1987). Consequently, he alleged, he was eligible to earn PAT and had earned sufficient PAT on these two sentences so to entitle him to release, thus his continuing detention was illegal. See State ex rel. Goodchild v. Burke, 27 Wis. 2d 244, 251, 133 N.W.2d 753 (1965) (holding that Goodchild's claims of constitutional error that would invalidate his murder conviction could be reviewed by

---

[20] Singh's petition made no mention of the August 2011 Milwaukee concurrent sentence.

20

habeas corpus even though he could not be discharged from custody due to a concurrent burglary sentence).  As will be demonstrated next, even though there was a violation of the ex post facto clause, Singh is not entitled to relief by way of his habeas petition.

¶180 First, Singh's Waukesha sentence has since been reduced to one year in jail.  Contrary to the suggestion of the lead opinion in footnote 7, the plain language of the statutes is very clear that PAT is earned only on a prison sentence——it cannot be earned on a jail sentence.  See Wis. Stat. § 302.113(1) (2009-10) ("An inmate is subject to this section if he or she is serving a bifurcated sentence imposed under s. 973.01.").  Wisconsin Stat. § 973.01 is the sentencing statute for prison sentences.[21]  While it once was, Singh's Waukesha sentence is no longer a prison sentence.  He is entitled to no habeas relief on this sentence because he could not be entitled to PAT for a jail sentence.[22]  He cannot be due habeas relief for being denied something for which he does not qualify.  See State ex rel. Wohlfahrt v. Bodette, 95

---

[21] "[W]henever a court sentences a person to imprisonment in the Wisconsin state prisons for a felony committed on or after December 31, 1999, or a misdemeanor committed on or after February 1, 2003, the court shall impose a bifurcated sentence under this section."  Wis. Stat. § 973.01(1).

[22] The record is not clear as to why the Waukesha sentence was amended, but it is clear that Singh is in a better position now because he no longer has any extended supervision in that case, he could not be returned to prison on that sentence, and he received a result better than could have been given had he received the requested relief in his habeas petition.

Wis. 2d 130, 132, 289 N.W.2d 366 (Ct. App. 1980) ("[T]he extent of an equitable remedy is limited only by the effect of the constitutional violation" (citation omitted).)

¶181 Second, even if Singh were granted all of the relief requested in his petition for habeas corpus, he would have a longer, not shorter, term of extended supervision to serve.[23] Nonetheless, the record reflects that his extended supervision terms have now been reduced by six months, as a publicly-available website reflects that Singh's maximum release date is now November 28, 2016.[24] Once again, he finds himself in a better, and not worse, position with an earlier release date than had he received PAT and his confinement time was converted to extended supervision.

¶182 Third, his current status as an offender on extended supervision is indeed a legally-imposed status such that he could not be entitled to habeas relief. It is the sentence imposed by the sentencing judge that authorizes——legally——the custody of the defendant.[25] See Earley v. Murray, 451 F.3d 71, 74 (2d Cir. 2006). Consequently, the current restraint on Singh's liberty is not "imposed contrary to constitutional

---

[23] Recall from sections II.A.1. and II.A.2., had he received all of the relief requested in his habeas petition, he would have at least 44 months extended supervision to serve.

[24] Presumably, his release date has been backdated to reflect the change in the Waukesha sentence.

[25] Assuming, of course, that the sentencing court considers the appropriate factors and imposes a sentence within the statutorily authorized range. See, e.g., State v. Gallion, 2004 WI 42, ¶43, 270 Wis. 2d 535, 678 N.W.2d 197.

protections" as would be required for Singh to be entitled to a writ of habeas corpus. In other words, he is currently on extended supervision and should be.

¶183 Fourth, if somehow further relief is due Singh, because he would have other remedies at law, he is not due any relief by a writ of habeas corpus.[26] Habeas relief is not due to one who has other adequate remedies at law. To the extent that further relief is warranted, Singh indeed has other adequate remedies at his disposal. For example, Singh can petition the DOC for application of any extra time he may have spent in confinement toward any confinement he will serve if his extended supervision is revoked; he can seek sentence credit under Wis. Stat. § 973.155; or he can bring a civil suit for monetary damages, if due. Because this is so, Singh's relief does not come by way of a writ of habeas corpus. See Haas, 252 Wis. 2d 133, ¶14 ("We have long and consistently held that the extraordinary writ of habeas corpus is not available to a petitioner when the petitioner has other adequate remedies available" (citations omitted).).

¶184 For the above stated reasons, I agree only with the lead opinion's conclusion to affirm in part and reverse in part the court of appeals. The opinion of Justice Ann Walsh Bradley is joined only by Justice Shirley S. Abrahamson. Justice David T. Prosser concurs, but does not join Justice Ann Walsh

---

[26] I am not opining as to whether Singh may have other civil remedies to pursue.

23

Bradley's opinion.[27]  While Justice Prosser engages in a thorough, reasonable, and persuasive analysis concerning Singh's ex post facto challenge, the facts of this case are so unique that regardless of the ex post facto analysis, the conclusion is the same.  As discussed in this writing, the peculiar facts of this case leave Singh with no habeas relief.

¶185 As the old adage warns, "bad facts make bad law." This case is a prime example of bad facts, and I am concerned that by undertaking an unnecessary review of the scope of the ex post facto clause we risk creating bad law.  Fortunately, we do not need to do so here.  As explained, under either interpretation of the proper scope of the ex post facto clause proffered by the members of the court, the result in this unusual case remains the same.  Put simply, Singh is due no relief on his writ of habeas corpus.  Judicial restraint requires that we resolve cases on the narrowest possible grounds.  See, e.g., DOJ v. DWD, 365 Wis. 2d 694, ¶29 ("[W]e are generally obliged to decide our cases on the 'narrowest possible grounds'" (quoting Subdiaz-Osorio, 357 Wis. 2d 41, ¶143 (Ziegler, J., concurring).)).  Accordingly, a decision on the precise scope of the ex post facto clause is unnecessary because Singh is entitled to no habeas corpus relief. Consequently remand is inappropriate in this case.

¶186 For the foregoing reasons, I respectfully concur in part and dissent in part.

---

[27] Chief Justice Roggensack and Justice Rebecca G. Bradley have authored separate but dissenting opinions.

¶187 I am authorized to state that Justice MICHAEL J. GABLEMAN joins this opinion.

¶188 PATIENCE DRAKE ROGGENSACK, C.J. *(dissenting).* The United States Supreme Court and this court have concluded that the ex post facto clauses of both Constitutions forbid enactment of laws that impose punishment for an act that was not punishable at the time the <u>act was committed</u> or that impose punishment that is greater than it was at the time the <u>act was committed</u>. <u>Peugh v. United States</u>, __ U.S. __, 133 S. Ct. 2072, 2078 (2013); <u>Weaver v. Graham</u>, 450 U.S. 24, 28 (1981); <u>State v. Kurzawa</u>, 180 Wis. 2d 502, 511, 509 N.W.2d 712 (1994). The lead opinion attempts to expand the definition by which we evaluate whether a statute violates the ex post facto clauses of the federal and state constitutions because it concludes that when a law changes after conviction or sentencing, an ex post facto violation occurs.[1]

¶189 Therefore, although I conclude that one of Aman Singh's three crimes under review herein has potential for an ex post facto violation under the correct ex post facto analysis, I do not join the lead opinion because I conclude the lead opinion's definition of ex post facto law is incorrect. Furthermore, I agree with the court of appeals' conclusion that the procedural change in the duties of circuit courts did not contravene ex post facto prohibitions.[2] The lead opinion's

---

[1] Lead op., ¶¶36, 44, 47.

[2] Because Justice Rebecca G. Bradley ably discusses and decides this issue, I join her opinion in that regard rather than writing about this issue myself. <u>See</u> Justice Rebecca G. Bradley's dissent, ¶¶248-49.

1

expansion of the definition of an ex post facto law misstates United States Supreme Court precedent and the precedent of this court. Accordingly, I would reverse the court of appeals' decision in part; affirm it in part; and I respectfully dissent from the lead opinion herein.

## I. BACKGROUND

¶190 The lead opinion and the concurrence/dissent of Justice Annette Ziegler ably set out the factual foundation that bears on Singh's claim. Therefore, I repeat only those facts necessary to enable the reader to understand the discussion that follows.

¶191 The issues in this appeal arise from Singh's confinement in prison as a result of prescription forgeries for narcotics in Waukesha and Milwaukee counties and from a statutory enactment, effective October 1, 2009 and repealed August 3, 2011, that provided an opportunity for a confined inmate to earn positive adjustment time (PAT) that was applied to reduce the inmate's period of confinement. The legislative repeal of PAT permitted credit for PAT earned between October 1, 2009 and August 3, 2011. Wis. Stat. § 973.198.

### A. Dates of Criminal Conduct

¶192 Singh committed the crimes that we review herein on three different dates. He committed the first offense October 16, 2008 in Waukesha County, before the October 1, 2009 effective date of the PAT statutes, Wis. Stat. § 302.113 (2009-10) and Wis. Stat. § 304.06 (2009-10).

2

¶193 Singh committed his second offense July 25, 2011 in Milwaukee County, while PAT was possible. He committed his third offense on August 10, 2011 in Milwaukee County, after PAT was repealed on August 3, 2011.

B. Singh's Convictions

¶194 On March 29, 2010, Singh pled guilty in Waukesha County Circuit Court to the crime committed October 16, 2008. Four other alleged violations of Wis. Stat. § 961.43(1)(a) were dismissed but read-in.

¶195 On November 9, 2011, at a joint plea hearing, Singh pled guilty to the Milwaukee County July 25, 2011 offense, and to the Milwaukee County August 10, 2011 offense. A joint sentencing hearing was scheduled for December 29, 2011.

C. Singh's Sentences

¶196 On April 29, 2010, the Waukesha County Circuit Court sentenced Singh to a bifurcated prison sentence of 18 months' confinement and 18 months' extended supervision for the 2008 crime. The court stayed imprisonment and imposed three years' probation conditioned on six months' jail time with Huber privileges.

¶197 On December 13, 2011, the Waukesha County Circuit Court revoked Singh's probation due to Milwaukee County offenses and vacated the stay of the initial sentence of 18 months' confinement and 18 months' extended supervision. Any opportunity for PAT based on confinement in prison for the Waukesha County crime could occur only if Singh's confinement

occurred before August 3, 2011 when PAT was repealed.[3] Wis. Stat. § 973.198. However, Singh's first day of confinement for any crime was January 4, 2012.

¶198 On August 6, 2010, the Waukesha County Circuit Court entered an order, which related that, before Singh's confinement began, the court had granted Singh 159 days of sentence credit for conditional jail time. On December 13, 2011, pursuant to the order of the Division of Hearing and Appeals, Singh received an additional 234 days of sentence credit for custody subsequent to revocation and prior to Singh's receipt at prison. Therefore, as of Singh's first day of confinement, he received 393 days of sentence credit, approximately 13 months, that was applied against his sentence for the Waukesha County crime.

¶199 On July 14, 2015, the Waukesha County Circuit Court entered an amended judgment that documented the credit given and also converted the Waukesha County sentence to one year in jail, with credit for time served. The court also vacated the 18 months of extended supervision initially imposed.

---

[3] When an inmate who is serving a sentence imposed under s. 973.01 and who has earned positive adjustment time under s. 302.113, 2009 stats., or under s. 304.06, 2009 stats., has served the confinement portion of his or her sentence less positive adjustment time earned between October 1, 2009, and August 3, 2011, he or she may petition the sentencing court to adjust the sentence under this section, based on the number of days of positive adjustment time the inmate claims that he or she has earned.

Wis. Stat. § 973.198(1) (2011-12) (emphasis added).

4

¶200 On December 29, 2011, Singh was sentenced for both Milwaukee County offenses. For the July 25, 2011 offense, he was sentenced to 24 months' initial confinement and 36 months' extended supervision, to be served consecutively to the Waukesha County sentence, but concurrently with the other Milwaukee County sentence. His first day of confinement for the July 25, 2011 crime is uncertain due to the modification of the Waukesha County judgment.[4]

¶201 For the August 10, 2011 offense, Singh was sentenced to 24 months' initial confinement and 36 months' extended supervision, to run concurrently with all other sentences.[5] On the sentence for the August 10, 2011 Milwaukee County crime, Singh had no opportunity to earn PAT because the PAT statutes were repealed August 3, 2011.

---

[4] The amended judgment removed confinement and extended from Singh's sentence for the Waukesha County crime, converting his sentence to jail time. This may have resulted in the confinement for both Milwaukee County crimes to actually have been served concurrent with each other from the first day.

[5] The sentencing provisions for the two Milwaukee County crimes also could have resulted in the confinement for the August 10, 2011 crime beginning before the confinement for the July 25, 2011 crime. This was possible because the sentence for the July 25 crime was consecutive to the sentence for the Waukesha County crime, while the sentence for the August 10 crime was concurrent with the sentence for the Waukesha County crime. The first day of confinement for any crime was January 4, 2012.

## II. DISCUSSION

### A. Standard of Review

¶202 Singh brings an as-applied constitutional challenge to Wis. Stat. § 973.198, claiming that it is an unconstitutional ex post facto law when applied to him. In such a challenge, we assume that the statute is constitutional, just as we do when a facial challenge to a statute is made on constitutional grounds. Tammy W-G. v. Jacob T., 2011 WI 30, ¶47, 333 Wis. 2d 273, 797 N.W.2d 854. However, we do not presume that the State has applied the statute in a constitutional manner. Id., ¶48. Rather, our test of the statute's application is driven by the analysis for the right that the proponent asserts has been burdened by the statute. Id., ¶¶49-51.

¶203 Here, Singh asserts in his petition for writ of habeas corpus that application of Wis. Stat. § 973.198 to the crimes he committed and for which he was convicted and sentenced would burden his personal liberty in contravention of the ex post facto provisions of the federal and state constitutions.

¶204 Whether a petition for writ of habeas corpus has been properly denied presents a mixed question of fact and law. State v. Pozo, 2002 WI App 279, ¶6, 258 Wis. 2d 796, 654 N.W.2d 12. We will not overturn findings of historic fact unless they are clearly erroneous. Id. However, under the facts presented, we independently review as a question of law whether habeas should have been granted. State ex rel. Woods v. Morgan, 224 Wis. 2d 534, 537, 591 N.W.2d 922 (Ct. App. 1999). Here, the historic facts are not in dispute. Therefore, we decide whether

6

a writ of habeas corpus should have issued as a matter of law. Id.

## B.  Ex Post Facto Prohibitions

### 1.  General principles

¶205 Both the United States Constitution and the Wisconsin Constitution have clauses that prohibit ex post facto laws.[6] Ex post facto is a Latin phrase that means "after the fact." Black's Law Dictionary 661 (9th ed. 2009).  The question this case presents is:  which fact is the determining "fact" when evaluating a contention that a particular law violates ex post facto clauses.  Stated otherwise:  whether the correct ex post facto analysis turns on the fact of crime commission, the fact of conviction for the crime, the fact of sentencing for the crime, or some combination thereof is the question presented in this review.

¶206 The United States Supreme Court interprets the federal constitution's ex post facto clause as prohibiting laws that change the punishment for a crime after commission because crime commission is the act for which notice of punishment is required.  Collins v. Youngblood, 497 U.S. 37, 42 (1990).  We follow United States Supreme Court precedent that interprets the federal constitution's prohibition of ex post facto laws when interpreting the Wisconsin Constitution's ex post facto clause. State v. Thiel, 188 Wis. 2d 695, 699, 524 N.W.2d 641 (1994).

---

[6] See U.S. Const. Art. I, §§ 9 and 10; Wis. Const. art. I, § 12.

¶207 Thiel is an important case because in it we reviewed United States Supreme Court decisions that had broadened the definition of ex post facto laws in ways that the Supreme Court later concluded were erroneous. Id. at 699-703. In following Supreme Court precedent, initially, we had adopted that more expansive definition of ex post facto laws. Id. at 701. However, we later concluded our expansion was erroneous because we had done so in reliance on subsequently overruled Supreme Court decisions. Id. at 703.

¶208 To explain further, we noted in Thiel that the United States Supreme Court in Collins withdrew language from Kring v. Missouri, 107 U.S. 221 (1883), which included within the definition of ex post facto "laws that altered a defendant's situation to his or her disadvantage." Thiel, 188 Wis. 2d at 700.

¶209 We had earlier adopted this broad definition of ex post facto laws to include laws that altered a defendant's situation to his or her disadvantage in State ex rel. Mueller v. Powers, 64 Wis. 2d 643, 646, 221 N.W.2d 692 (1974). In Mueller, we relied on Medley, Petitioner, 134 U.S. 160, 171 (1890). Mueller, 64 Wis. 2d at 645-46. Medley had followed the expansive definition in Kring that, in Collins, the Supreme Court concluded was erroneous.[7] See Medley, 134 U.S. at 171.

---

[7] The lead opinion relies on State ex rel. Mueller v. Powers, 64 Wis. 2d 643, 221 N.W.2d 692 (1974), as did the court of appeals. Lead op., ¶¶63-66. That reliance is in direct contravention of State v. Thiel, 188 Wis. 2d 695, 703, 524 N.W.2d 641 (1994) and of Collins v. Youngblood, 497 U.S. 37, 42 (1990), which we followed in Thiel. Similarly, the lead opinion
(continued)

8

¶210 Before us, Thiel had relied on the Mueller recitation that expanded the definition of ex post facto laws to include laws that "alter the situation of an accused to his or her disadvantage." Thiel, 188 Wis. 2d at 702. Because we follow United States Supreme Court precedent when interpreting both the United States Constitution's and the Wisconsin Constitution's ex post facto clauses, we concluded that Mueller set forth an incorrect definition and we withdrew that overly broad definition from our interpretations of ex post facto clauses. Id. at 703.

¶211 Collins was clear in overruling prior United States Supreme Court decisions that had held that any change in the law that alters the situation of a party to his disadvantage violated the ex post facto prohibition and explicitly reaffirmed the definition set out in Calder v. Bull, 3 U.S. 386, 390-92 (1798):

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and

relies on State ex rel. Eder v. Matthews, 115 Wis. 2d 129, 133, 340 N.W.2d 66 (Ct. App. 1983), for the proposition that "[a] law which increases or alters the punishment of an offender to his detriment, after he has been convicted and sentenced, constitutes an ex post facto law . . . ." (emphasis omitted) (internal quotation marks omitted). Lead op., ¶45. However, Matthews solely relies on Mueller; therefore, Matthews also is in contravention of our subsequent holding in Thiel. See Matthews, 115 Wis. 2d at 133.

9

receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

Collins, 497 U.S. at 42 (emphases removed).

¶212 Subsequent to Collins and in order to avoid future errors about the definition of ex post facto laws under the Wisconsin Constitution, we held:

[A]n ex post facto law, prohibited by the Wisconsin Constitution, is any law: "which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed."

Thiel, 188 Wis. 2d at 703 (quoting Collins, 497 U.S. at 42).

¶213 United States Supreme Court decisions issued after Collins, consistently employ crime commission as the act for which notice of punishment is required under the ex post facto clause. Peugh, 133 S. Ct. at 2078; see also Weaver, 450 U.S. at 28-29 (citing 12 cases).[8] As the Supreme Court explained in Peugh:

The Framers considered ex post facto laws to be "contrary to the first principles of the social compact and to every principle of sound legislation." The Federalist No. 44, p. 282 (C. Rossiter ed. 1961) (J. Madison). The Clause ensures that individuals have fair warning of applicable laws and guards against vindictive legislative action.

---

[8] The lead opinion cites Weaver v. Graham, 450 U.S. 24 (1981), as though it supports the broad definition of ex post facto laws that the lead opinion creates. Lead op., ¶¶39, 41, 47, 67. However, Weaver does not do so. Weaver employs the date the crime was committed as the act from which it measures whether a law is ex post facto. Weaver, 450 U.S. at 28.

<u>Peugh</u>, 133 S. Ct. at 2084-85. Stated otherwise, crime commission is the act for which notice of consequences is required. "[T]he principle on which the Clause is based——the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties——is fundamental to our concept of constitutional liberty." <u>Marks v. United States</u>, 430 U.S. 188, 191 (1977); <u>Kurzawa</u>, 180 Wis. 2d at 511.

¶214 The lead opinion employs a new definition of ex post facto law when it changes the act from which ex post facto effect is measured to include a temporary change in a law that was repealed subsequent to conviction and sentencing.[9] The lead opinion states, "the early release provisions of 2009 Wis. Act 28 were retroactively in effect when Singh was convicted and sentenced for the first offense, [the Waukesha County crime] as well as at the time he committed the second offense."[10]

¶215 The definition created by the lead opinion affects defendants who could not earn PAT when they committed the criminal act, but due to a statutory enactment, could earn it at the time of sentencing even though the opportunity was repealed before the start of confinement.[11] No United States Supreme Court opinion supports the lead opinion's definition of ex post facto law, nor does any opinion from this court.

---

[9] Lead op., ¶¶36, 44, 47.

[10] <u>Id.</u>, ¶8.

[11] <u>Id.</u>, ¶33.

11

¶216 In regard to Singh's first crime, which was committed in Waukesha County October 16, 2008, there was no opportunity for PAT in 2008. In 2009, PAT was enacted. Singh was convicted and sentenced for the 2008 crime in 2010. The 2009 legislation permitted him to benefit until PAT was repealed August 3, 2011, if he were confined between October 1, 2009 and August 3, 2011.

¶217 Because the August 3, 2011 repeal of PAT caused the law to be as it was in 2008 when Singh committed the first of his crimes, the 2011 legislation did not impose punishment that was greater than it was at the time Singh committed the first of his crimes. In addition, Singh was not confined for any of his crimes until January 4, 2012, after PAT was repealed. Therefore, no ex post facto violation occurred with the repeal of PAT for the 2008 Waukesha County crime, nor was he denied PAT he earned before the repeal.

¶218 In regard to Singh's second crime, which was committed in Milwaukee County on July 25, 2011, there was the opportunity for PAT and accordingly, the potential for an ex post facto violation if the PAT he earned had an effect on the duration of his confinement. However, from the record before us, it is not possible to make that factual determination, and even if it were, habeas will not provide relief under the facts of this case.

¶219 The potential for an ex post facto violation on the second crime due to repeal of PAT is not possible to determine due to the following circumstances presented by this case: (1) Singh's third crime was committed on August 10, 2011, after PAT

12

was repealed, and therefore, had no potential for PAT; (2) initially, Singh received the same Wis. Stat. § 973.01 sentence for the third crime as he received for his second crime, 24 months' confinement and 36 months' extended supervision and the sentences were to be served concurrently; (3) however, the sentence for Singh's second crime also was consecutive to the sentence for Singh's first crime; (4) the sentence for Singh's first crime, for which he initially was sentenced pursuant to § 973.01, was converted to a one-year jail sentence, with extended supervision vacated, for which he received 13 months' credit and from which he was released on "time served."

¶220 If the modification of the Waukesha County sentence caused it to be only a one-year jail sentence for which he was given 13 months' credit, then the sentences for his second and third crimes both began January 4, 2012. Because the third crime had no opportunity to earn PAT, it would not matter whether Singh earned PAT on the sentence for his second crime because he would not have been released from confinement any earlier due to the concurrent sentence for his third crime.

¶221 In addition, Singh is no longer confined. He was released to extended supervision on June 2, 2014; therefore, the remedy of habeas——release from custody——provides nothing to Singh at this point. It may be that Singh can prove, as a factual matter, that he was confined on the second sentence longer than should have occurred and that some type of relief

13

may be accorded, but it is not due under a writ of habeas corpus.[12]

¶222 In summary, by relying on the acts of conviction and sentencing, the lead opinion creates an ex post facto violation for Singh that is contrary to the constitutional precedent of the United States Supreme Court and of this court.[13]

### III. CONCLUSION

¶223 We continue to follow United States Supreme Court precedent in regard to defining ex post facto laws. Because the lead opinion does not do so and instead attempts to create an expanded definition of ex post facto law, I do not join the lead opinion in any respect. Furthermore, I agree with the court of appeals' conclusion that the procedural change in the duties of circuit courts did not contravene ex post facto prohibitions. Accordingly, I would reverse the court of appeals' decision in part; affirm it in part; and I respectfully dissent from the lead opinion herein.[14]

---

[12] See Justice Ziegler's concurrence/dissent, ¶¶167-75.

[13] Lead op., ¶¶36, 44, 47.

[14] As the lead opinion acknowledges, remand is not appropriate as a majority of justices so conclude. Id., ¶1 n.1.

¶224 REBECCA G. BRADLEY, J.   *(dissenting)*.   I dissent from the lead opinion because Singh has not proven any ex post facto violation in this case.   As the lead opinion explains, Singh contends that 2011 Act 38, which repealed Wis. Stat. § 302.113(2)(b)(2009-10) and § 304.06(1)(bg)1.(2009-10) and created Wis. Stat. § 973.198 (2011-12), was an ex post facto law.[1]   Singh argues the repealed statutes eliminated the opportunity that previously existed to earn early release through positive adjustment time (PAT), which Singh argues increased his punishment.   He also contends the process established in § 973.198 delays up to 90 days the release of inmates who earned PAT under the 2009 law and the standards for early release changed under the 2011 law.

¶225 In challenging the 2011 law, Singh must overcome the presumption that legislative enactments are constitutional.  See State v. Cole, 2003 WI 112, ¶11, 264 Wis. 2d 520, 665 N.W.2d 328.  This court will indulge "every presumption to sustain the law if at all possible," and will resolve any doubts in favor of upholding the constitutionality of the challenged statute.  Id. (citation omitted).   Singh bears the heavy burden of proving that the statute is unconstitutional beyond a reasonable doubt. Id.

---

[1] All subsequent references to Wis. Stat. § 302.113 and § 304.06 will be to the 2009-10 version of the Wisconsin Statutes, and all subsequent references to Wis. Stat. § 973.198 will be to the 2011-12 version of the Wisconsin Statutes.

1

¶226 Because Singh has failed to meet this heavy burden, I would reverse the court of appeals' conclusion that the repeal of the PAT statutes constituted a violation of the ex post facto clause and I would affirm the court of appeals' holding that Wis. Stat. § 973.198 is a procedural change, which does not implicate ex post facto concerns.

I. BACKGROUND

¶227 This case presents an unusual factual scenario because Singh committed his first crime before the PAT statutes were enacted, committed his second crime when the PAT statutes were in effect, and committed his third crime after the PAT statutes had been repealed. He was convicted and sentenced on the first crime when the PAT statutes were in effect, but this sentence was stayed and not revoked until after the PAT statutes were repealed. Singh's second and third crimes were joined for the purposes of accepting his plea and sentencing. The plea and sentence on the joined second and third crimes occurred after the PAT statutes were repealed.

¶228 Thus, it is critical to decide what date is used in analyzing whether Singh established an ex post facto violation: is it the date Singh committed the crime, the date he was found guilty of the crime, the date he was sentenced, or some combination of the three? The timeline of Singh's crimes, convictions, and sentences against the backdrop of truth-in-sentencing law and the enactment and repeal of the PAT statutes is as follows:

2

- October 16, 2008: Singh commits the first crime, a class H felony in Waukesha.

- 2008: A class H felony had a maximum total sentence of six years, with a maximum initial confinement of three years, plus up to a $10,000 fine. Truth-in-sentencing law is in effect.

- October 1, 2009: 2009 Wis. Act 28 becomes effective. Act 43 created Wis. Stat. § 302.113(2)(b) and Wis. Stat. § 304.06(1)(bg)1, giving inmates the opportunity to earn PAT days which, if approved by the circuit court, allowed release to extended supervision earlier than originally imposed. This did not ever change the overall length of the sentence; instead, any approved PAT days would be added on to the extended supervision portion of a sentence.

- 2009: A class H felony had a maximum total sentence of six years, with a maximum initial confinement of three years, plus up to a $10,000 fine, which is the same penalty as in 2008.

- March 29, 2010: Singh pleads guilty to the Waukesha crime.

- April 29, 2010: Waukesha County Circuit Court sentences Singh to three years, consisting of 18 months initial confinement, followed by 18 months extended supervision. The sentence is stayed and Singh is given probation with six months of conditional jail time.

- 2010: A class H felony had a maximum total sentence of six years, with a maximum initial confinement of three years, plus up to a $10,000 fine, which is the same penalty as in 2008 and 2009.

- July 25, 2011: Singh commits the second crime, a class H felony in Milwaukee County.

- August 3, 2011: 2011 Wis. Act 38 goes into effect. The Act repeals inmates' opportunity to earn PAT days, except that current inmates are allowed to keep the PAT days earned between October 1, 2009 (the effective date of this part of 2009 Wis. Act 43) and August 3, 2011. 2011 Wis. Act 38 also created Wis. Stat. § 973.198, which provides:

  > (1) When an inmate who is serving a sentence imposed under s. 973.01 and who has earned positive adjustment time under s. 302.113, 2009 stats., or under s. 304.06, 2009 stats., has served the confinement portion of his or her sentence less positive adjustment time earned between October 1, 2009, and August 3, 2011, he or she may petition the sentencing court to adjust the sentence under this section, based on the number of days of positive adjustment time the inmate claims that he or she has earned.

  > (3) Within 60 days of receipt of a petition filed under sub. (1), the sentencing court shall either deny the petition or hold a hearing and issue an order relating to the inmate's sentence adjustment and release to extended supervision.

  > (5) If the court determines that the inmate has earned positive adjustment time, the court may reduce the term of confinement in prison by the amount of time remaining in the term of confinement in prison portion of the sentence, less up to 30 days, and shall lengthen the term

4

of extended supervision so that the total length of the bifurcated sentence originally imposed does not change.

(6) An inmate who submits a petition under this section may not apply for adjustment of the same sentence under s. 973.195 for a period of one year from the date of the petition.

- August 10, 2011: Singh commits another class H felony in Milwaukee County, the third crime.

- November 9, 2011: Singh is convicted in Milwaukee County Circuit Court on both the July 25 and August 10 crimes.

- December 13, 2011: Singh's probation on his Waukesha conviction is revoked.

- December 29, 2011: Milwaukee County Circuit Court sentences Singh to five years each on the two Milwaukee crimes, consisting of two years' initial confinement, followed by three years' extended supervision. The sentence on the July 25, 2011 crime was consecutive to his 2008 Waukesha sentence, but concurrent with the August 10, 2011 sentence. The August 10, 2011 sentence was imposed concurrent to any other sentence.

- 2011: A class H felony had a maximum total sentence of six years, with a maximum initial confinement of three years, plus up to a $10,000 fine, which is the same penalty as in 2008, 2009, and 2010.

- January 4, 2012: Singh starts his prison sentence.

- June 28, 2013: Singh files his habeas petition in circuit court after the Department of Corrections

5

rejected Singh's request for PAT early release under Wis. Stat. § 302.113(2)(b).

## II. ANALYSIS

### A

¶229 Given this timeline, it is essential to determine what date to use in the ex post facto analysis. The lead opinion followed the court of appeals' direction and lumped together Singh's dates of commission, conviction, and sentencing: "Like the court of appeals, we conclude that because the early release provisions of 2009 Wis. Act 28 were retroactively in effect when Singh was convicted and sentenced for the first offense, as well as at the time he committed the second offense that the retroactive repeal of positive adjustment time in 2011 Wis. Act 28 violates the ex post facto clauses of the Wisconsin and United States Constitutions." Lead op., ¶8. The law does not support this conclusion.

¶230 In analyzing whether a law is unconstitutionally ex post facto, the date a crime was committed is the correct date to use. Weaver v. Graham, 450 U.S. 24, 28 (1981)("The ex post facto prohibition forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed." (emphasis added; one set of quotation marks and quoted source omitted)). The United States Supreme Court consistently uses the date of commission in conducting an ex post facto analysis. See Garner v. Jones, 529 U.S. 244 (2000); Peugh v. United States, 133 S. Ct. 2072 (2013). This court agreed in State v. Kurzawa, 180 Wis. 2d 502, 509

6

N.W.2d 712 (1994), that "ex post facto analysis is concerned with changes in the law relative to the time the defendant engaged in his allegedly illegal behavior." Id. at 513.

¶231 Courts use the date of commission because the purpose of the ex post facto clause is to provide fair warning as to what conduct will give rise to criminal penalties and what those penalties will be. See Kurzawa, 180 Wis. 2d at 511 (citing Marks v. United States, 430 U.S. 188, 191-92 (1977)). Our Founders included a prohibition against ex post facto laws in the Constitution to ensure against "manifestly unjust and oppressive" laws that punish a person after the fact for conduct that was not punishable before the law existed. See Calder v. Bull, 3 U.S. (3 Dall.) 386, 390 (1798)(opinion of Chase, J.). Calder explained:

> The prohibition against their making any ex post facto laws was introduced for greater caution, and very probably arose from the knowledge, that the Parliament of Great Britain claimed and exercised a power to pass such laws, under the denomination of bills of attainder, or bills of pains and penalties; the first inflicting capital, and the other less, punishment. These acts were legislative judgments; and an exercise of judicial power. Sometimes they respected the crime, by declaring acts to be treason, which were not treason, when committed, at other times, they violated the rules of evidence (to supply a deficiency of legal proof) by admitting one witness, when the existing law required two; by receiving evidence without oath; or the oath of the wife against the husband; or other testimony, which the courts of justice would not admit; at other times they inflicted punishments, where the party was not, by law, liable to any punishment; and in other cases, they inflicted greater punishment, than the law annexed to the offence. . . . With very few exceptions, the advocates of such laws were stimulated by ambition, or

7

personal resentment, and vindictive malice. To prevent such, and similar, acts of violence and injustice, I believe, the Federal and State Legislatures, were prohibited from passing any bill of attainder; or any ex post facto law.

Id. at 389 (footnotes omitted).

¶232 The ex post facto clause prohibits:

1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

Id. at 390 (emphasis added). The ex post facto clause's historical meaning is based on fundamental fairness. See id. at 389-90. Singh's case is concerned with the third prohibition: did the 2011 law change his punishment by "inflict[ing] a greater punishment, than the law annexed to the crime, when committed."

¶233 What is clear from the ex post facto case law and the reason for the clause's inclusion in our Constitution is that a proper ex post facto analysis focuses on the laws in effect at the time Singh committed the crimes. As seen from the timeline, the PAT laws were not in effect when Singh committed his Waukesha crime in 2008 or when he committed his August 10, 2011 Milwaukee crime. Singh cannot (and does not) argue that his August 10, 2011 crime falls within his ex post facto challenge because this crime occurred after 2011 Wis. Act 38 went into

8

effect. The August 10, 2011 crime is referenced because it is tied to the July 25, 2011 crime via the joint sentencing hearing.

¶234 Because a proper ex post facto analysis focuses on the laws in effect at the time Singh committed his crimes, Singh cannot establish any ex post facto violation relating to his 2008 Waukesha crime. At the time Singh committed the 2008 crime, the PAT opportunity did not exist; therefore, 2011 Wis. Act 38's repeal of it does not implicate any ex post facto concerns regarding the 2008 crime.[2] The 2011 law does not increase Singh's sentence attached to the 2008 crime because it makes no change to the punishment that existed at the time Singh committed the 2008 crime.[3]

B

¶235 The only crime in this case that was committed when the PAT statutes were in effect was Singh's July 25, 2011 Milwaukee crime. Thus, the dispositive issue is whether Singh

---

[2] Although the 2009 law allowed inmates sentenced after December 31, 1999 to earn PAT days (and Singh was sentenced on the 2008 crime after December 31, 1999), Singh was never an inmate during the effective dates of the 2009 law. By the time Singh became an inmate, the 2011 law was in effect. In comparing the 2011 law to the laws in effect when Singh committed his 2008 crime, no ex post facto concerns arise.

[3] As noted in the lead opinion at footnote 7, Singh's 2008 Waukesha sentence was amended to one-year jail time. Because PAT only applied to inmates in prison, this sentencing amendment further supports my conclusion that PAT does not apply to Singh's 2008 Waukesha crime. See Singh v. Kemper, 2014 WI App 43, ¶¶26-29, 353 Wis. 2d 520, 846 N.W.2d 820 (PAT only applied to time in prison, not time spent in jail).

proved beyond a reasonable doubt that the enactment of 2011 Wis. Act 38 violated the ex post facto clause by taking away Singh's opportunity to earn PAT days on the sentence imposed for the July 25, 2011 crime. Singh has failed to prove the repeal of the PAT statutes resulted in an ex post facto violation.

¶236 At the time Singh committed the July 25th Milwaukee crime, Wis. Stat. § 302.113(2)(b) allowed inmates to earn PAT days while in prison. 2011 Wis. Act 38 repealed the PAT statutes, but allowed inmates to keep any PAT days earned from the date the PAT statutes were enacted until the date the PAT statutes were repealed. See Wis. Stat. § 973.198(1). Singh contends 2011 Wis. Act 38 is an unconstitutional ex post facto law because it eliminated his opportunity to earn PAT days, thereby increasing the time he was in prison. The lead opinion holds the 2011 law is an ex post facto law because it makes "the punishment for an offense more burdensome after it was committed." Lead op., ¶4.

¶237 In order for Singh to succeed on his claim, he must prove beyond a reasonable doubt that the 2011 law changed his punishment, and inflicted a greater punishment than the law annexed to the crime when committed. See Calder, 3 U.S. at 390. Although the United States Supreme Court strayed from this historical meaning of the ex post facto clause over the years, by expanding it to include any change in punishment that disadvantaged a defendant, see Kring v. Missouri, 107 U.S. 221 (1883), Lindsey v. Washington, 301 U.S. 397, 401 (1937), Weaver,

10

450 U.S. at 32, and Miller v. Florida, 482 U.S. 423, 433-34 (1987), the Court later rejected the "disadvantaged" test.

¶238 In Collins v. Youngblood, 497 U.S. 37, 50, (1990), the Supreme Court overruled Kring v. Missouri:

> The holding in Kring can only be justified if the Ex Post Facto Clause is thought to include not merely the Calder categories, but any change which "alters the situation of a party to his disadvantage." We think such a reading of the Clause departs from the meaning of the Clause as it was understood at the time of the adoption of the Constitution, and is not supported by later cases. We accordingly overrule Kring.

Collins, 497 U.S. at 50. Further, in California Department of Corrections v. Morales, 514 U.S. 499 (1995), the Court said the "disadvantage the defendant" language used in Lindsey, Weaver, and Miller "was unnecessary to the results in those cases and is inconsistent with the [ex post facto] framework developed in Collins v. Youngblood, 497 U.S. 37, 41 (1990)." Morales, 415 U.S. at 506 n.3. The Court explained:

> After Collins, the focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of "disadvantage," nor, as the dissent seems to suggest, on whether an amendment affects a prisoner's "opportunity to take advantage of provisions for early release," . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.

Morales, 415 U.S. at 506 n.3 (emphasis added).

¶239 In that case, Morales was convicted for a murder committed in 1971 and a second murder in 1980. At the time he committed the murders, California law required annual suitability hearings after the initial parole hearing. Id. at

11

503. In 1981, the California legislature authorized the Board of Prison Terms (Board) to defer subsequent suitability hearings for up to three years in certain circumstances. Id. In 1989, Morales was denied parole after his initial parole hearing. Id. at 502-03. The Board scheduled his next parole hearing for three years later pursuant to the 1981 law. Id. at 504. Morales claimed he was entitled to an annual parole hearing because that was the law when he committed his crimes, and, as a result, the 1981 law violated the ex post facto clause. Id. The Court refused to interpret the ex post facto clause in a manner to require the judiciary to micromanage an "endless array of legislative adjustments to parole and sentencing procedures," that "might create some speculative, attenuated risk of affecting a prisoner's actual term of confinement by making it more difficult for him to make a persuasive case for early release." Id. at 508-09. Instead, the Court examined whether the new legislation produced "a sufficient risk of increasing the measure of punishment attached to the covered crimes." Id. at 509. The Court went on to conclude the legislation at issue in Morales did not violate the ex post facto clause. Id. at 510-14.

¶240 In Peugh, 133 S. Ct. 2072, the Supreme Court again analyzed the ex post facto clause. It held that a defendant who committed crimes in 1999 and 2000, but was not sentenced until 2010, should be sentenced using the sentencing guidelines that were in effect at the time he committed the crimes, rather than at the time he was sentenced. Id. at 2078-79, 2081. In Peugh,

12

the Court emphasized that the "basic principles of fairness that animate the Ex Post Facto Clause" are ensuring that individuals have fair warning of applicable laws and are not saddled with vindictive legislative action. Id. at 2084-85. The Court described the ex post facto inquiry as "whether a given change in law presents a sufficient risk of increasing the measure of punishment attached to the covered crimes" and emphasized that "mere speculation or conjecture that a change in law will retrospectively increase the punishment for a crime will not suffice to establish a violation of the Ex Post Facto Clause." Id. at 2081-82 (two sets of quotation marks and quoted sources omitted). Because the retrospective increase in the sentencing guidelines changed Peugh's sentencing range from 30-37 months to 70-87 months, id. at 2078-79, the Court held the new guidelines constituted an ex post facto violation. Id. at 2084.

¶241 The Supreme Court's latest pronouncement on ex post facto law focuses on whether the retrospective law causes an increase in the measure of punishment that was attached to the crime when it was committed. There is no doubt that 2011 Wis. Act 38 eliminated the opportunity for inmates then serving sentences to earn PAT days after August 3, 2011. The 2011 law, however, like the change in parole policy in Morales, did not change the sentence Singh received for his July 25, 2011 crime. Rather, it eliminated the opportunity to earn PAT days, which

13

possibly could have led to converting some confinement days to extended supervision time.[4]

¶242 Under the original meaning of the ex post facto clause, courts should "draw a distinction between the penalty that a person can anticipate for the commission of a particular crime, and opportunities for mercy or clemency that may go to the reduction of the penalty." Garner, 529 U.S. at 258 (Scalia, J., concurring).

¶243 The PAT statutes at issue here were very different from the mandatory parole cases where courts held the new law produced ex post facto violations. For example, in Weaver, the ex post facto law involved reducing mandatory gain time credits.

---

[4] In Lynce v. Mathis, 519 U.S. 433 (1997), the Supreme Court declared unconstitutional a Florida law that cancelled already earned provisional early release credits. Lynce had been released from prison because he completed his sentence based on time served plus provisional early release credits. Id. at 435-36. Lynce was rearrested and reincarcerated as a result of the new law cancelling the provisional early release credits. Id. at 436. The Court held the Florida statute violated the ex post facto clause because Lynce had already earned and used the early release credits——the law did not merely remove "an opportunity for early release." Id. at 447. The new law put Lynce, who had been released because he completed his sentence, back in prison. Id. As Justice Clarence Thomas, joined by Justice Antonin Scalia explained in a concurring opinion: "The present case [Lynce] involves not merely an effect on the availability of future release credits, but the retroactive elimination of credits already earned and used." Id. at 451. The facts in Singh's case are quite different than Lynce. The 2011 law did not take away PAT days Singh had already earned and used, and the 2011 law did not lengthen the overall sentence imposed. The 2011 law Singh challenges removed an opportunity to possibly convert confinement days to supervision days. It affected the availability of future PAT days, but did not eliminate credits already earned or used.

14

The gain-time credits were automatic under both the old and new legislation. Id., 450 U.S. at 36. Under the old law, an inmate was automatically entitled to receive 5, 10 or 15 days off the sentence according to the good conduct formula whereas the new law substantially reduced the gain-time formula to 3, 6 or 9 days off the sentence. Id. at 26, 36. In Mueller, the new law changed parole eligibility from two years to five years. Id., 64 Wis. 2d at 645. Under the old law, inmates were "as a matter of right" considered for parole after serving two years in prison. Id. at 647. The new law changed that "right" to five years. Id. at 645. These facts distinguish between an automatic right, which was known to be a part of the sentence, and the situation presented here where an inmate had an opportunity to possibly earn PAT early release, which does not change the overall length of the sentence imposed.[5] Neither Weaver nor Mueller involved the opportunity to possibly have PAT days shorten confinement days but lengthen supervision time. It

---

[5] Mueller v. Powers applies the ex post facto doctrine both relative to the date of commission of the crime and laws that change after conviction and sentencing. 64 Wis. 2d 643, 646, 221 N.W.2d 692 (1974). This does not change my conclusion that the critical time is what law is in effect on the date of commission of the crime. New legislation will often come after conviction and sentencing as these events naturally occur after the commission of the crime. See also State ex rel. Eder v. Matthews, 115 Wis. 2d 129, 132-133, 340 N.W.2d 66 (Ct. App. 1983)(citing Mueller for the "convicted and sentenced" language in a case where the issue was "when a mandatory release parole violator is returned to prison to serve forfeited good time credit, can the Department order that the forfeited time be treated as a 'new sentence' for the purpose of calculating good time.")(footnote omitted).

15

is also significant that both <u>Weaver</u> and <u>Mueller</u> relied on the "disadvantage to a defendant" language to conclude that the laws in those cases violated the ex post facto clause. As noted, that language has been withdrawn, and is not the proper test to use in this ex post facto analysis. <u>See</u> <u>Collins</u>, 497 U.S. at 50; <u>State v. Thiel</u>, 188 Wis. 2d 695, 702-03, 524 N.W.2d 641 (1994)(withdrawing <u>Mueller</u>'s language that ex post facto test reviews whether new law "disadvantages" a defendant).

¶244 It is also worth noting that the punishment for Singh's crime——a class H felony——has not changed. It was six years with up to a maximum of three years' confinement plus up to a $10,000 fine in 2008, 2009, 2010 and 2011. 2011 Wis. Act 38 did not change the punishment annexed to the crime Singh committed at the time he committed it. <u>See</u> <u>State ex rel. Britt v. Gamble</u>, 2002 WI App 238, ¶24, 257 Wis. 2d 689, 653 N.W.2d 143 (holding that subsequently repealing the law in existence at the time the crime was committed that gave defendant the opportunity to ask for early release was not ex post facto because the sentence imposed was not extended). The 2011 law did not change the punishment "attached" to the crime Singh committed on July 25, 2011. It removed Singh's hope or opportunity to earn conversion of confinement days into extended supervision days, but it did not increase the sentence attached to the crime he committed.

¶245 It is further significant that the 2011 legislation does not offend a faithful application of the ex post facto clause's historical meaning. The 2011 law did not inflict a

16

greater punishment than what already existed for Singh's crime when he committed it. The 2009 PAT statutes gave inmates an opportunity to earn PAT days with the possibility of converting confinement days into extended supervision days. The 2009 PAT statutes were not mandatory and release under the statutes was not guaranteed. The 2009 PAT statutes did not change the overall length of the sentence imposed and there is nothing to suggest the legislature repealed the PAT statutes to be oppressive or vindictive. To the contrary, Wis. Stat. § 973.198(1) included language to ensure inmates could keep the PAT time already earned, which demonstrates fairness and mercy.

¶246 Furthermore, Singh cannot benefit from PAT even though it existed at the time he committed his July 25, 2011 crime because he was not an inmate when the opportunity to earn PAT days existed. Singh's claim that the 2011 legislation increased the measure of his punishment is speculative. Even if Singh had been an inmate and able to earn PAT days, there is no evidence that his request for early PAT release would have been granted. Thus, his claim is pure speculation, which cannot support an ex post facto violation.

¶247 Accordingly, I conclude Singh failed to establish any ex post facto violation. I would reverse that part of the court of appeals' opinion holding that the 2011 legislation violated the ex post facto clause.

C

¶248 Singh also argues Wis. Stat. § 973.198 violates the ex post facto clause because it delays the time, up to 90 days, to

17

release inmates who have successfully petitioned for early release and because it changes the standard associated with making PAT-based early release decisions. Section 973.198 does change the procedure with respect to PAT petitions. Under the 2009 law, inmates petitioned the "earned release review commission" and the commission notified the sentencing court, which then decided whether to grant or deny the inmate's request. Under the 2011 law, the commission's participation in the process is eliminated and the inmate petitions the sentencing court directly. In addition, Singh argues the 2011 law altered the timing of the PAT petitions: in 2009, the process started before the eligibility date and in 2011, the process starts on the eligibility date.

¶249 The court of appeals held that the changes in Wis. Stat. § 973.198 are procedural and therefore do not implicate ex post facto. I agree with the court of appeals on this issue for the reasons it explained in its opinion:

> A procedural change in the law is one that "simply alter[s] the methods employed in determining" whether the punishment is to be imposed rather than "chang[ing] . . . the quantum of punishment attached to the crime." And while a procedural change, in some cases, may have a substantive impact that violates the ex post facto clauses, "speculative and attenuated possibilit[ies]" of increasing a prisoner's actual term of confinement do not violate the clauses. Because a significant risk of prolonged confinement is not inherent in the framework of the Wis. Stat. § 974.198 procedural change, such risk must be demonstrated on the record or an ex post facto violation will not be found. Singh has not met his burden of proving this change in the method for securing early release based upon PAT violates the ex post facto clauses.

18

<u>Singh v. Kemper</u>, 2014 WI App 43, ¶22, 353 Wis. 2d 520, 846 N.W.2d 820 (citations omitted). Although the parties disagree as to whether the language of the statutes under the 2009 law and the 2011 law differ with respect to when the request to start the potential early release process starts, this disagreement need not be resolved. The change in the law removing the commission as the intermediary and altering the timing of petitions are both procedural changes, which do not implicate ex post facto concerns. See <u>Dobbert v. Florida</u>, 432 U.S. 282, 293-94 (1977)("Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto."). I would affirm that part of the court of appeals opinion holding § 973.198 did not violate the ex post facto clause because the new statute addresses procedure rather than "the quantum of punishment attached to the crime." See <u>id.</u> at 294.

¶250 For these reasons, I respectfully dissent.

¶251 I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK joins part C of this opinion.

19